LANDRY, Judge.
The instant appeal presents for determination only the question of quantum due plaintiff, Louis Carles, for personal injuries sustained in an automobile accident admittedly resulting from the negligence of an assured of defendant, Hartford Accident and Indemnity Company.
Following trial of the aforesaid issue below, judgment was rendered in favor of plaintiff in the sum of $4,000.00 for pain and suffering and $213.00 for special damages. Defendant, Hartford Accident and Indemnity Company, (sometimes hereinafter referred to simply as “Hartford”), has appealed seeking a reduction in the award. Answering the appeal, plaintiff prays for an increase in the judgment granted by the trial court.
The accident in question occurred July 13, 1961, on which date plaintiff sought treatment from his family physician, Dr. William M. Moody, Baton Rouge, Louisiana, who was out of his office when plaintiff called. Plaintiff, however, was examined by Dr. Coco, an associate of Dr. Moody, who was in at the time plaintiff visited Dr. Moody’s office. According to plaintiff, Dr. Coco did not inform him of the nature of his injuries but merely advised plaintiff to return later to see Dr. Moody. Dr. Coco was not called to testify on plaintiff’s behalf.
Plaintiff’s principal injury consisted of a whiplash" type injury to his spine. Five days following the accident, plaintiff was seen by Dr. Moody in the latter’s office. Examination by Dr. Moody revealed the type of injury previously noted attended by maximum tenderness at the C-6 and L-4 vertebrae, the cervical involvement being the more severe. In addition, Dr. Moody diagnosed a mild cerebral concussion, all diagnoses being made without benefit of radiology. Plaintiff was never hospitalized but was seen by Dr. Moody on four subsequent occasions, namely, August 11, August 17, August 31 and September 21, 1961. Approximately six weeks following the accident, plaintiff resumed work as an employee in the office of the Assessor of East Baton Rouge Parish.
On October 19, 1961, appellee consulted Dr. Thomas Campanella, an orthopedist. *263 It is stoutly contended by counsel for appellant that Dr. Campanella’s findings were not proved to be causally related to the accident with that degree of certainty required by law and should therefore be disregarded in the assessment of damages due appellee herein. A serious dispute exists between the parties regarding whether Dr. Moody in fact referred plaintiff to Dr. Campanella or whether plaintiff visited the specialist of his own volition.
Dr. Moody’s testimony is to the effect that on the occasion of plaintiff’s final visit on September 21, 1961, his diagnosis of plaintiff’s condition was the same as on previous calls. On the last visit Dr. Moody observed that plaintiff’s concussion and lower back difficulty had cleared up, but that plaintiff was still experiencing pain in the cervical region and for this reason he released appellee to the care of an orthopedist. However, Dr. Moody was confronted with a letter written by him to Hartford under date of September 22, 1961, containing the following statements:
“ * * *
As you know, he was injured in an accident on July 13, 1961, at noontime, at Greenwell Springs Road and Brookstown. The diagnosis of a whiplash injury and a slight concussion was made at the time.
The patient has continued to improve since that time, the last visit being in August, at which time the patient was released with about 95% recovery.
However, he again visited the undersigned on September 21, 1961, when complete physical examination again revealed the patient to be entirely well.
At this particular time there are no residuals, and the patient has fully recovered.
* * * ”
Despite the positive, unqualified statement to the effect plaintiff was fully and completely recovered with no residual effect, appearing in the aforesaid letter, Dr. Moody, when, called as a witness in plaintiff’s behalf, nevertheless explained that he was undoubtedly mistaken in stating plaintiff was completely recovered as of September 21, 1961. He maintained that he sees some 40 patients daily and must have erred in his report due to a lapse of memory. He insisted plaintiff was not recovered on the date mentioned but that rather he released plaintiff to a specialist as plaintiff was still complaining of pain in the cervical region. Upon cross examination, however, Dr. Moody readily conceded he could not effect independent recollection of each patient’s case history and was therefore required to rely upon his notes. He conceded his recol-' lection was undoubtedly better on September 22, 1961, the day following plaintiff’s last visit. Dr. Moody could not recall whether X-rays had been taken of plaintiff’s neck and low back. Consultation of his notes disclosed no radiology had been undertaken. Except for his recollection that he referred plaintiff to a specialist, which reminiscence is in direct contradiction of his written notes, he could recall nothing of plaintiff’s history without resorting to his file.
We believe the evidence preponderates in favor of the conclusion Dr. Moody is honestly mistaken in his statement that he released plaintiff to the care of an orthopedist on September 21, 1961. Firstly, his notes made the day following the incident in question, while the events were fresh in his mind and on which he relied in answering all other queries regarding plaintiff’s etiology, contradict his subsequent recollection. Secondly, the evidence establishes conclusively that plaintiff did not consult Dr. Campanella until one month following the last visit to Dr. Moody, namely, October 19, 1961. If plaintiff had been suffering cervical pain on September 21, 1961, to the extent now contended, it is inconceivable that Dr. Moody could have concluded plaintiff was fully recovered. Moreover, if plaintiff was then afflicted to the extent he now asserts, it is most improbable he would have waited a full month to seek relief from *264 a specialist after having been advised to do so by his family physician.
Dr. Campanella saw appellee on four occasions, namely, October 19, November 7, December 12, 1961, and January 14, 1963. On initial examination plaintiff related complaints of pain in the right cervical region radiating down the arm to the hand, and some discomfort in the lower back on the right side. Muscle spasm was noted on the right side of the neck and in the right tra-pezius muscle. Restriction of movement of the neck to the left was also observed and tenderness was found in the area of the C-7 vertebra. X-rays taken pursuant to Dr. Campanella’s direction proved negative. Dr. Campanella prescribed home traction and medication for pain. On November 7, 1961, Dr. Campanella found some improvement in cervical movement but noted the continuance of a degree of muscle spasm. When plaintiff visited Dr. Campanella on December 12, 1961, plaintiff’s symptoms were found to have greatly improved. On January 14,1963, plaintiff complained of pain in the left shoulder and neck accompanied by numbness of the left hand. Examination on this last occasion disclosed some tightness and considerable spasm of the left trapezius muscle and also revealed tenderness upon pressure over the C-7 vertebra and pain in the region of the C-5 vertebra upon left .and right lateral bending. It will be noted that on this occasion the area of plaintiff’s difficulty had changed from the right to the left cervical region.
Dr. Campanella diagnosed plaintiff’s condition as a traction type neuritis, not a whiplash type injury as characterized by Dr. Moody. According to Dr. Campanella the condition would endure indefinitely. He further testified he had no way of establishing a causal relationship between the accident and injury except plaintiff’s narrations. He also stated that plaintiff’s condition could result from trauma, inflammatory reaction of a nerve root due to a common cold, atmospheric changes, arthritis, excessive consumption of drugs or alcohol or a mechanical disturbance of the spine resulting in impingement of a nerve root. Dr. Campanella observed some arthritis from the X-rays taken, but not to an abnormal extent for a patient of plaintiff’s age. He was also of the opinion that Dr. Moody’s prior finding of complete recovery did not necessarily mean the subsequently developed symptoms were not caused by the accident, because in an injury of such nature symptoms may be expected to disappear and return.
In substance plaintiff, his wife, and an associate testified plaintiff has exhibited a complete change of character since the accident. Before his injury plaintiff never complained of pain and was rather active. Since the accident, however, plaintiff has constantly complained of pain and has taken medicine continuously. He has difficulty sleeping and at times changes from his bed to a lounge chair to relieve his pain. During the trial below, more than four years following the accident, plaintiff was still complaining of pain.
In view of the foregoing it is obvious that if defendant is correct in the contention plaintiff was completely recovered by September 21, 1961, the award of the trial court is excessive. On the other hand, if plaintiff has established that his present pain is causally related to the accident the amount allotted by the trial court is inadequate and should be increased.
It is settled jurisprudence that plaintiff bears the burden of establishing each and every essential element of his cause to a legal certainty by a clear preponderance of evidence. Livaccari v. United Jewish Appeal, Inc., La.App. 126 So.2d 67. The establishment of possibility, speculation or even unsupported probability is not sufficient to support plaintiff’s claim. Guillory v. New Amsterdam Cas. Co., La.App., 141 So.2d 493; Ernest v. Tac Amusement Co. et al., La.App., 163 So.2d 818.
After careful review of the record before us, we conclude plaintiff has failed to establish that the ill effects of the *265 accident have been shown by a clear preponderance of evidence to persist subsequent to September 21, 1961. In this connection, the written record kept by Dr. Moody unequivocally states plaintiff was completely recovered as of the mentioned date. Notwithstanding Dr. Moody’s contradiction of his record at the trial, we believe under the circumstances above related, we must accept the recorded opinion of Dr. Moody coupled with plaintiff’s failure to seek further medical attention until one month following his discharge by Dr. Moody as being complete and without residual effect.
Upon scrutinizing Dr. Campanella’s testimony, we conclude that whereas he assumes plaintiff’s present condition to be due to the accident predicated entirely upon plaintiff’s narration of events, his opinion is in essence an assumption, mere speculation and an unsupported probability. Dr. Campanella did not, indeed, under the circumstances he could not, testify with any reasonable degree of certainty that plaintiff’s present complaints are related to the the accident. Granted he stated the symptoms of such an ailment were known to appear and disappear, it must be recalled, however, he related numerous other causes from which plaintiff’s present condition could have resulted. It was not incumbent upon defendant to establish that the continuance of the symptoms resulted from some cause other than the accident, it was the duty of appellee to establish a causal relationship between the accident and his present condition. This appellee has failed to do by that clear preponderance of evidence required by law.
Finding that plaintiff has failed to establish continuance of his disability beyond the date of his discharge by Dr. Moody, the judgment of the trial court is deemed excessive and reduced to the sum of $2,500.00.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court in favor of plaintiff, Louis Carles, for pain and suffering be and the same is hereby reduced from the sum of $4,000.00 to the sum of $2,500.00 and as thus amended, affirmed.
Amended and affirmed.