276 So.2d 703 (1973)
Ennissie A. THIBODEAUX et ux.
v.
ST. JOSEPH HOSPITAL et al.
No. 9264.
Court of Appeal of Louisiana, First Circuit.
March 19, 1973.
Rehearing Denied May 14, 1973.
E. Kelleher Simon (Sessions, Fishman, Rosenson, Snellings & Boisfontaine), New Orleans, Edward P. Lobman and Jack Alltmont, New Orleans, for appellants.
E. L. Deramee, Jr. (Deramee & Deramee), Thibodaux, for appellees.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
This appeal is from a judgment awarding plaintiffs, Mr. and Mrs. Ennissie A. Thibodeaux, damages for personal injuries and related medical expense sustained and incurred when Mrs. Thibodeaux was struck by a door opening into a patient's room in St. Joseph Hospital, Houma, Louisiana. *704 Named defendants are: (1) St. Joseph Hospital (Hospital); (2) Argonaut Insurance Company and Argonaut-Southwest Insurance Company (Insurers), liability insurer of Hospital; (3) Call Arthur Treacher Service Systems of New Orleans (Arthur); an independent contractor providing janitorial service for Hospital; (4) The Millers Mutual Fire Insurance Company of Texas (Millers), Arthur's insurer, and (5) Emelda Rogers (Maid) a maid in the employ of Arthur.
The trial court rejected plaintiffs' demands against Hospital and Insurers, but rendered judgment against Arthur, Millers, and Maid, in solido, in favor of Mrs. Thibodeaux in the sum of $22,000.00, and in favor of Mr. Thibodeaux for special damages aggregating $2,559.70. All defendants cast have appealed. We reduce the awards to plaintiffs.
The accident occurred on the morning of October 29, 1969, as Mrs. Thibodeaux was removing bags of clothing from a closet in the room of her 8 year old son in preparation for the boy's return home following hospitalization for a broken arm. The closet was adjacent to the door which provided ingress and egress to the room. Mrs. Thibodeaux was standing, with arms upstretched, in front of the closet, the door of which she had opened to her right against the door leading into the room. When the maid opened the door to enter, the entrance door struck the closet door which in turn struck Mrs. Thibodeaux on her right side. Following the accident, X-rays taken of Mrs. Thibodeaux's right side disclosed the presence of a straight pin in her lower right lung.
Appellants maintain the lower court erred in: (1) holding that plaintiffs bore the burden of proving the Maid negligent, and also of proving that plaintiff's injuries were a foreseeable result thereof; (2) finding that plaintiff either gasped for breath and sucked the pin into her lungs when she was struck by the door or that the blow aggravated a pre-existing condition it the pin were already in plaintiff's lung, and (3) awarding Mrs. Thibodeaux damages for pain and suffering for injuries beyond a sore chest which caused pain for only a few days, which was the only injury sustained in the accident. Appellants also contend the trial court erred in accepting the testimony of Mrs. Thibodeaux in preference to that of the Maid, notwithstanding glaring inconsistencies in Mrs. Thibodeaux's testimony.
In substance, Mrs. Thibodeaux testified she was in her son's room when the Maid entered to clean up. The Maid performed certain chores and left. Believing the Maid was through, Mrs. Thibodeaux went to the closet to get her son's clothing which was in two or three paper bags on the closet shelf. As she reached into the closet, the Maid again entered the room and, without knocking, forcibly opened the entrance door which struck plaintiff on the right side. She gasped for breath and felt immediate pain. She unsuccessfully attempted to obtain help from someone passing in the hallway. Finally a priest appeared and summoned another party who took her blood pressure, and escorted plaintiff to the hospital emergency room. After X-rays disclosed the presence of the pin in her lung, she requested the attending physician to hospitalize her overnight because of her pain. Despite this request, she was sent home. On returning home, she continued to feel intense pain and difficulty in breathing. On October 31, 1969, she consulted her family physician, Dr. Andrew Hoffman, who referred her to Dr. Claude C. Craighead, thoracic surgeon. On her initial visit to Dr. Craighead, she was still in intense pain and so informed the doctor. Dr. Craighead eventually removed the pin by surgery. After being hospitalized about ten days for surgery, she returned home. She experienced pain after the operation, but recovered in about six weeks. On Dr. Craighead's orders, she wore a neck brace to alleviate pain in that area, which device she wore for about a year. Thereafter, she again began seeing Dr. Hoffman for *705 pain, but was forced to discontinue the visits because of financial reasons. For this same reason, she did not return to Dr. Craighead. In August, 1971, her chest pains became so intense she was again hospitalized for four or five days and was administered pills and injections. At the time of trial, she was improved somewhat, but was still bothered by pain in her arm and side and was unable to sweep or mop her home. Mrs. Thibodeaux was most emphatic to the effect she did not have a pin in her mouth or on her person at the time of the incident. She could not explain how or when the pin entered her body. She was also most insistent she did not keep pins in her home, did not sew for either her husband or children, and had never even replaced a button on clothes for herself or any member of the family.
Defendant Rogers testified she first entered the room after parking her cleaning cart in the hall and knocking on the room door. She observed plaintiff seated near the window away from the door. She performed part of her chores and left the room to get supplies from her cart. She did not close the door. Upon reentering, she found the door partly closed and again knocked. As she pushed the door open, it contacted the closet door. She reached inside, pushed the closet door, then opened the hall door and entered the room. At this time, plaintiff was standing near her son's bed, and did not mention being struck by a door. Miss Rogers then continued her chores, and again returned to her cart leaving the room door open. When she reentered the third time, plaintiff was still standing by the patient's bed, and it was at this time that plaintiff complained of having been struck by the door. She stated she did not open the door violently on any occasion, and that when she reached inside to close the closet door, she felt nothing. She was certain the door did not hit anyone. Miss Rogers also testified that plaintiff did not appear to be in pain, and that it was she and not plaintiff who reported the incident to the floor nurse.
Immediately following the accident, plaintiff was seen by Dr. James Jackson. Upon noting the history given, Dr. Jackson ordered X-rays to check for possible rib fractures. At the time, plaintiff was complaining of constant chest pain. He detected a round head straight pin in plaintiff's lower right lung, but no evidence of rib fracture. He received a negative answer to his inquiry whether plaintiff had a pin in her mouth when the accident occurred. He referred plaintiff to her family physician for further treatment. In Dr. Jackson's opinion, an object of the nature involved could enter a person's body only by either being inhaled or as a projectile. He was also of the opinion that such an object could remain unnoticed for a considerable time, but that entry by inhalation should cause considerable coughing.
Dr. Andrew Hoffman, specialist in obstetrics and gynecology, plaintiff's family doctor, saw plaintiff on October 31, 1969. The patient complained of chest pains in the right posterior region. Physical examination revealed nothing except that plaintiff was obviously in considerable pain, particularly upon deep breathing or lying down. X-rays disclosed the presence of the pin in plaintiff's lung. Plaintiff was unable to explain the presence of the pin in her lung. In his opinion, the pin probably entered plaintiff's body by inhalation. He was also of the opinion that such a foreign object could remain in a person's body for a long time without causing any medical problem. Between December 1, 1969 and August 23, 1971, Dr. Hoffman saw plaintiff five times for complaints consisting of pain on breathing, shortness of breath and neck pains. On August 26, 1971, plaintiff was hospitalized for X-rays which revealed a small area of tenting of the pleura along the right diaphragm which Dr. Hoffman found could be due to old fibrosis and inflammatory change or could be an inactive pleuritis. In Dr. Hoffman's opinion, this condition was probably not due to the pin episode or surgery, *706 although he conceded he was not qualified to give an opinion on this matter. He also stated that plaintiff was of a very nervous disposition, and that some of her symptoms following the operation could be due to her anxiety and nervousness.
Dr. Claude C. Craighead, surgeon, first saw plaintiff on November 3, 1969. She was not suffering from any pain whatsoever, and was asymptomatic insofar as any kind of pain was concerned. He attempted to orally remove the pin by bronchoscopy on November 6, 1969, but this method proved unsuccessful. He removed the pin surgically which involved separating but not sawing through the ribs, nevertheless the procedure caused extreme, constant post surgical pain. Plaintiff was discharged from the hospital on November 15, 1969, following which she was seen on several occasions. Plaintiff was last seen on October 5, 1970. Some tenting of the right diaphragm was noted. Dr. Craighead was of the view the tenting may have been caused by plaintiff's pleuritis, he did not think it resulted from the lung surgery. He was also of the opinion that the pin could have remained in plaintiff's lung for a long time without detection. Dr. Craighead saw plaintiff several times following her discharge from the hospital, the last time on October 5, 1970. He found plaintiff had some tenting of the right diaphragm, and was of the opinion it had some connection with plaintiff's pleuritis. He did not attribute the tenting to the prior lung surgery. He stated that in cases of this nature, the patient frequently has trouble with inflammation caused by a reaction around the object, but that no such situation existed with plaintiff. He could not tell how long the pin had been in plaintiff's lung. He found no evidence of a reaction around the object when it was removed.
The trial court rejected plaintiffs' claims against Hospital and Insurers on the ground the hospital was faulty in design. Plaintiffs have neither appealed nor answered Appellants' appeal, consequently the judgment dismissing plaintiffs' action as to said defendant is final. Texas Gas Transmission Corporation v. Hebert, La.App., 207 So.2d 368.
The trial court, though recognizing the irreconcilable conflict between the testimony of plaintiff and Miss Rogers, nevertheless resolved the question of liability in favor of plaintiffs. Appellants argue that because of the inconsistencies and inaccuracies in plaintiff's testimony, the trial court should have rejected plaintiff's testimony and rejected plaintiffs' demand for lack of proof. In this regard, Appellants point to Mrs. Thibodeaux's insistence the room contained two closets which were side by side; that she claims to have been in great pain when she saw Dr. Craighead, which testimony is refuted by Dr. Craighead; that she made the untenable assertion Dr. Jackson virtually forced her out of the hospital despite her obvious desperate condition, to await the availability of a hospital room, and that she illogically insisted she had never sewn a stitch, and never had a straight pin in her home. Appellants invoke the rule that where the evidence is evenly divided, the court has no choice except to find against the party charged with the burden of proof, as held in Diaz v. Breaux, La.App., 252 So.2d 697; Anthony v. State Farm Mutual Insurance Company, La.App., 227 So.2d 180; La Fleur v. White System, Inc., La.App., 235 So.2d 141, and others.
We think this matter falls within the ambit of United States Fidelity and Guaranty Company v. Fiffie, La.App., 211 So.2d 690, which holds that witnesses are weighed, not counted, and although there are an equal number on each side, the prime function of the trier of fact is to determine the fact which is not accomplished simply by counting noses. See Fiffie, above, and cases therein cited.
*707 Here the trial court accepted Mrs. Thibodeaux's testimony to the effect she was struck by the door, notwithstanding the inconsistencies in her testimony. Inasmuch as Mrs. Thibodeaux immediately sought medical aid, and was attended by Dr. Jackson who found her suffering from chest pains within a few minutes of the accident, we find no manifest error in the trial court's finding that an accident did occur.
We find, however, that Appellants correctly contend plaintiffs have failed to establish causal connection between the accident and any injuries which Mrs. Thibodeaux may have sustained as the result of the pin being found in her lung, either by virtue of the accident causing the lodging thereof or aggravating a dormant, asymptomatic pin previously lodged in her lung.
It is well settled that plaintiff bears the burden of proving each and every element of his case to a legal certainty and by a fair preponderance of evidence. Proof which establishes only possibility, speculation or unsupported probability does not suffice to establish a plaintiff's claim. Carles v. Hartford Accident and Indemnity Company, La.App., 184 So.2d 261.
To recover in a tort action, plaintiff must establish not only that defendant was guilty of tortious activity or conduct, but also that it is more probable than not that the damage suffered was a result of that conduct. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151; Ferina v. United Paper Company, 252 So.2d 542.
The record affords absolutely no basis for concluding that the accident in some manner caused Mrs. Thibodeaux to inhale a pin. By her own testimony, she had no pin in her mouth at the time. The clear inference from her testimony is that she did not even have a pin on her person. Insofar as the trial court concluded the pin was inhaled at the time of the accident, the finding is erroneous. Neither could the pin have driven into plaintiff's body as a projectile by the force of the door striking her side, inasmuch as she had no pin on her person.
We find the evidence overwhelmingly preponderates in favor of the conclusion that the pin was in plaintiff's lung for an undetermined period prior to the accident. So finding, we consider the possibility that the force of the blow aggravated and rendered symptomatic a previously existing dormant asymptomatic condition as the trial court alternatively held.
Plaintiff, plaintiff's husband and certain lay witnesses attested to plaintiff's continued pain following the accident. The medical testimony, namely, that of Dr. Craighead, does not substantiate this contention. Dr. Craighead testified positively that plaintiff made no complaint of pain when he first saw her on November 3, 1969. He also noted that plaintiff gave no history indicative of a pin in her lung prior to the accident. He was of the opinion that except for the accident and resulting X-rays to check for possible fractured ribs, plaintiff might still be walking around unaware of the presence of a pin in her lung. Dr. Craighead's testimony is unmistakably to the effect that the pin was not removed to alleviate plaintiff's complaints of pain resulting from an aggravation of the pin's dormant, asymptomatic presence in plaintiff's lung. On the contrary, his testimony is clearly to the effect the pin was removed to eliminate what the initial X-rays revealed to be a theretofore unknown foreign object in plaintiff's lung which matter posed a threat to plaintiff's health. Additionally, Dr. Craighead was of the view that plaintiff's recovery was routine except she developed intercoastal neuralgia. He further deposed that surgery of this nature would ordinarily result in intense pain for *708 an extended post-operative period because the ribs were subjected to considerable pressure and disturbance during the operative process. This condition, we find, was not attributable to the accident. From Dr. Craighead's testimony, we conclude that any aggravation of plaintiff's lung condition resulting from the accident had ceased when Dr. Craighead first saw plaintiff on November 3, 1969. In concluding that the accident aggravated plaintiff's preexisting condition requiring surgical removal of the pin, the lower court decided contrary to the clear preponderance of medical evidence and committed reversible error.
However, plaintiff is entitled to damages for the pain and suffering experienced between the date of the accident and her initial visit to Dr. Craighead. Under the circumstances, we feel an award of $500.00 for this element of damages will do substantial justice between the parties.
Plaintiff apparently sustained no medical expense prior to her hospitalization on November 3, 1969. All medical bills of record commence as of that date. Since the operation was not necessitated by the accident, recovery of these expenses is not allowable herein.
Accordingly, the judgment of the trial court awarding plaintiff, Mr. Ennissie A. Thibodeaux damages in the sum of $2,559.70 is reversed and set aside, and the judgment rendered herein rejecting and dismissing said plaintiff's demands against defendants, Arthur, Millers and Maid. Judgment is also rendered herein reducing the judgment in favor of plaintiff, Mrs. Ennissie A. Thibodeaux against defendants, Arthur, Millers and Maid from the sum of $22,000.00 to the sum of $500.00; all costs of these proceedings to be paid by defendants, Arthur, Millers and Maid. In all other respects, the judgment of the trial court is affirmed.
Reversed in part, amended in part and rendered.