524 So.2d 226 (1988)
Gus A. TRAPANI, Jr.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 87-CA-777.
Court of Appeal of Louisiana, Fifth Circuit.
April 18, 1988.
Writ Denied June 2, 1988.
*227 Edward P. Lobman, Metairie, Lisa Montgomery Lewis, New Orleans, for plaintiff/appellee.
John P. Cosentino, New Orleans, for defendant/appellant.
Before DUFRESNE, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
This appeal arises from an automobile accident. The plaintiff appeals the dismissal of his uninsured motorist claim and denial of his claim for penalties and attorney's fees.
The plaintiff, Gus Trapani, Jr., a Jefferson Parish resident, was driving a van on Parish Road 45 near Franklinton, Louisiana, on the night of October 4, 1985. The vehicle ran off the road, hitting a tree and seriously injuring Trapani, who was alone in the van. There were no eye witnesses, but the plaintiff asserts that the accident was caused by a hit and run driver whose vehicle's headlights blinded him and whose vehicle drifted into his lane, striking the van on the left front bumper.
State Farm Mutual Automobile Insurance Company, Trapani's insurer, denied uninsured motorist coverage because it did not believe there had been an impact. Trapani sued and a jury rendered a 9-3 verdict against the plaintiff, finding no impact. The trial judge rendered judgment adopting the verdict and in a separate judgment denied penalties and attorney's fees. This appeal followed.
The appellant raises as issues: 1) whether there is a reasonable basis for the jury's findings of no contact between Trapani's vehicle and another; 2) whether the finding was not clearly wrong; 3) whether the trial judge erred in disallowing opinion testimony from Dr. Griffith, plaintiff's expert, while allowing it from Mr. Denson, defendant's expert, on the question of the occurrence or not of a vehicular collision; and 4) whether the appellant is entitled to penalties and attorney's fees.
The standard of appellate review was set out in detail recently in Mart v. Hill, 505 So.2d 1120 (La.1987). There the Supreme Court reversed the decision below affirming the trial court's findings as to causation of a back injury. The court stated, at 1127:
Appellate courts may not disturb the fact findings of the trier of fact in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1979). In Arceneaux, we posited a two part test for the appellate review of facts:
1) The appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).

Arceneaux, 365 So.2d at 1333; B and L Associates, Inc. v. Crump, 369 So.2d 1094, 1095 (La.App. 1st Cir.1979).
Accordingly, if an appellate court concludes that the trial court's factual findings are clearly wrong, the mere fact that some record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance. Davis v. Owen, 368 So.2d 1052, 1056 (La.1979). Although appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the fact finder was justified in his conclusions. See, e.g., Parker v. Rhodes, 260 So.2d 706, 717 (La.App. 2d Cir.1972). An appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979).
*228 The testimony of the witnesses who viewed the locale of the accident is in agreement that Parish Road 45 is a winding black-topped two lane rural road, about 18 feet wide, without a centerline and unlighted. The shoulders are very narrow and the road drops off on both sides about three to five feet, with woods on both sides in the area near the accident site. The accident occurred at about 11:00 p.m. and the weather was dry.
Trapani testified that he had not traveled on Parish Road 45 before. He entered it from another road on which he was driving 45 to 50 miles per hour. He came upon a turn, took his foot off the accelerator and slowed down. His testimony continues as follows:
... I came out of the turn and I noticed headlights coming my way. There was aboutthere was a little sign, uh, a little small rectangle sign that's got the reflectors on it on the left side of the road, was up a little ways, maybe a hundred foot or so, and I saw these headlights coming. As I got closer to the sign, I noticed the car was drifting into my lane.
I kinda just was trying to decide what I should do: whether I should get over in the left lane and I washe was still on the left and part of the right; whether I should stop. I elected to stay in my lane. I got over to the right as close as I could.
As I right passed this little bridge, the vehicle passed me and when we [sic] passed me, I felt the impact in the left front of my vehicle.
When that happened, my van rocked to the right. It felt like it was going to the right. I counter steered back to the left. When I did that, felt the back of the van sliding to the right.
At that point, I think I tried to hit the brakes, and II don't remember where I wound up until later on when I saw the accident scene that I crossed the road and I hit a tree.
Did you ever see the other vehicle?
Nothing but the lights, sir.
The investigating deputy sheriff, Stanley Herring, testified that he interviewed Trapani briefly in the emergency room and the plaintiff reported only being blinded by the lights of an oncoming car. Herring's recollection of the investigation was somewhat vague as he covered several other accidents that evening. He did recall that when he went to the scene that evening he saw slippery "white stuff" on the roadway, which he thought could have been a causative factor. He listed the accident as a one-car accident on his report. Trapani had spent the evening working with Gregory Polland at his home. Polland was called shortly after the accident, went to the emergency room and later to the scene. He testified that Trapani seemed confused and had difficulty talking. Trapani mentioned only the blinding headlights and not an impact.
The van was towed to Polland's home and he noted dents and blue-gray paint on the left front corner of the bumper, which was most noticeable in the dents. The presence of paint was a crucial point during the trial. Trapani insisted that the paint was not there before the accident and that the condition of his van was very important to him, as the van was an integral part of his tool business. He had had it painted recently and washed it himself, so that he was certain there was no paint there earlier. One of plaintiff's experts, Raymond Burkart, testified that he examined the van in December, 1985 and noted the dents and paint. He stated that the paint and damage appeared fairly new. He explained further:
... It didn't have time to have any degree of tarnish or rust buildup in that area. It, uh, was a flaky type paint that... that could, uh, that was not, let's say undercoating or something like that. It had been pressed on through some sort of collision process.
Burkart opined that there was minor contact between the oncoming vehicle and the van and that the bumper damage could have been caused by the "rivet of a bumper or ... and followed by some minor contact with the wheel wells." He found no damage to the headlight or turn signal lights on the left front nor to the rubber substance *229 between the bumper and metal on the front end of the van. Dr. Oscar F. Griffith, a physics professor at UNO, was accepted as an expert in physics and the application of physics principles to accident reconstruction. He examined the vehicle and accident scene with Mr. Burkart and testified to seeing paint in notches on the bumper. He concluded that the damage and paint on the bumper could have been caused by a force sufficient to rock the van. As will be discussed below, the court sustained the defendant's objection to opinion testimony by Dr. Griffith as to whether the van had been hit by another vehicle.
The appellees argue that if Trapani had moved as far to the right as possible and an impact took place then, the vehicle would have gone down the embankment on the right. The plaintiff's expert, Mr. Burkart, was questioned as follows:
Q. [Assume] that he was as far right inon the road as he thought he could get, and ... as you testified in your opinion he steered to his right at or about the moment of collision, and a collision with his left front occurred which rocked his vehicle to the right, would he not have gone down the embankment on the right hand side rather than on thecross the road and off on the left hand side?
A. If you want me to assume what you just said, that's correct.
Mr. Burkart had stated earlier that he did not believe Trapani was at the very edge of the road.
The appellees also point out that the plaintiff's testimony regarding the impact was vague:
Q. Now you said you felt an impact in your left front is that correct?
A. Yes, sir.
Q. Describe what you felt Mr. Trapani?
A. Well when we got to the point where he was up on me, I felt the front of the vanIII actually felt the van have contact and move.
Q. Well, describe for me what you mean by you "felt the van have contact?"
A. Well I felt that the, uh, the left side of my van be moved. I knew that I had had contacts.
Q. Well moved in what direction?
A. It moved to thetoward the right.
Q. Do you know whether or not your front right wheel slipped off the edge of the roadway and that's what's caused it to feel a move to the right?
A. No sir. I wasI was on the blacktop. The only time that my wheels went off was when I felt the back wheel come over.
Q. Well, are you telling us that you just felt your vehicle move to the right and that's what you consider to be an impact?
A. Yes sir, II am.
Q. And you didn't notice anything about this other vehicle as it crossed in front of your headlights either before or after this alleged impact?
A. No sir.
The defendant's expert, Leonidas Denson, a mechanical engineer, examined the bumper in February, 1987 along with the police report, Trapani's statement, and the snapshots but did not visit the scene. He testified that the marks on the bumper were probably made by contact with a concrete barrier, but admitted it was possible they could have been made by contact with another vehicle. However, he stated that, "as I understand this accident I don't think it happened at the time of the accident." When asked whether in his inspection of the bumper he saw evidence of an impact prior to that with the tree, he said, "While there was some road damage on theon the bumper, I did not see anything which I considered evidence of contact with another vehicle." He did not believe that the damage to the bumper was caused by a side swipe, based on his examination, because the van would have had to be at right angles to the other vehicle and there was insufficient room on the roadway for that to happen. *230 As to the issue of the judge's disallowing Dr. Griffith's testimony on whether an impact had taken place, we first note Dr. Griffith was accepted as an expert in the field of physics and the judge would "allow him to testify as to how physics principles may apply to ... accident reconstruction." He had had ten years of practical experience in evaluating accidents and had been qualified as an expert in accident reconstruction several times.
Mr. Denson, the defendant's expert, is a mechanical engineer with twenty years experience in accident investigation and had investigated about 300 automobile accidents. He had qualified as an expert in accident reconstruction, and in the course of his investigation applied physics principles to accident reconstruction. Neither Denson nor Griffith had had extensive formal training in accident reconstruction. The court accepted Denson as follows:
He's accepted as a Expert Mechanical Engineer, as tendered. He may give opinions regarding this accident reconstruction.
Counsel for the plaintiff raised no objection, although he had questioned Mr. Denson as to his qualifications. However, he later objected strenuously to the court's allowing Denson's opinion testimony on the occurrence or not of an impact.
The disallowed testimony by Dr. Griffith was received on proffer and is as follows:
Q. From your investigation into the facts of this accident were you able to determine whether or not the plaintiff's van or in your opinion was the plaintiff's van struck on it's left front by an oncoming vehicle prior to the van colliding with the tree?
A. Yes Mymy answer to that question would be that there isis looking at the characteristic of the dents in thein the bumper that there is isthey are certainly consistent with an impact of this vehicle with another.
While we may question the trial court's ruling in this matter since the qualifications of the experts appear to be similar, qualification of experts and exclusion of testimony is within the discretion of the judge. In the absence of manifest error we may not reverse the ruling. Further, we do not feel that disallowing the testimony damaged the plaintiff's case, as he was able to bring out his point with other questions.
The standard of proof required in a civil action is stated in Jennings v. City of Alexandria, 394 So.2d 718 (La.App. 3rd Cir.1981) as follows at 721:
The plaintiff in a civil action bears the burden of proving by a preponderance of the evidence every element of fact essential to his recovery. Proof which establishes only possibility, speculation or unsupported probability is not sufficient to establish a claim. Thibodeaux v. St. Joseph Hospital, 276 So.2d 703 (La.App. 1st Cir.1973); Johnson v. Travelers Indemnity Co., 309 So.2d 357 (La.App. 2nd Cir.1975); writ denied, 313 So.2d 604 (La. 1975); Mayes v. McKeithen, 213 So.2d 340 (La.App. 1st Cir.1968), writ refused [252 La. 965] 215 So.2d 130 (La.1968), certiorari denied, 396 U.S. 868, 90 S.Ct. 108, 24 L.Ed.2d 121.
The plaintiff in the case before us bears a heavy burden indeed, with the absence of an eye witness, with his own recollection clouded by the shock of his injuries, and with the paucity of physical evidence. While the accident possibly happened in the manner narrated by the plaintiff, we cannot say more than than it is possible. The indentations and paint on the bumper are not probative of contact with another vehicle. Without an impact, there is no insurance coverage.
Accordingly for the reasons discussed above, we affirm the judgment of May 15, 1987, adopting the jury verdict. Additionally, we find no error in the judgment rendered June 3, 1987, in which the trial judge denied penalties and attorney's fees, and affirm that judgment.
AFFIRMED.