602 So.2d 314 (1992)
Virginia McALLISTER, et al.
v.
CHAMPION INSURANCE COMPANY, et al.
No. 91 CA 0996.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
*315 Hobart Pardue, Springfield, for plaintiffs.
John Dale Powers, Baton Rouge, for LIGA.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Wyvonia Granger was westbound on Interstate 12 in Livingston Parish on September 16, 1988, when her vehicle was forced through a guardrail and into a drainage canal by a vehicle driven by an unknown motorist (Doe). Granger's sister, Virginia McAllister, was a passenger in the vehicle at the time of the accident.[1] Both were injured. Doe's identity was never ascertained. McAllister and Granger (plaintiffs) sued Champion Insurance Company (Champion), which provided uninsured motorist coverage for this accident.[2] The Louisiana Insurance Guaranty Association (LIGA) represented the interests of Champion in this litigation.
At trial, LIGA contended there was no coverage under the Champion policy. That policy contained the following provision:
"uninsured automobile"... means:
....
(b) a hit and run automobile;
....
"hit-and-run automobile" means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident....
LIGA attempted to prove there was no physical contact between Granger's vehicle and Doe's vehicle. The trial court, however, found plaintiffs had proven contact *316 by a preponderance of the evidence. The trial court awarded McAllister $8,500.00 in general damages plus medical expenses of $1,761.32.[3] The court awarded Granger general damages of $7,500.00 and medical expenses of $1,525.63.[4]
LIGA appeals, contending:
1. The trial court erred in ruling in favor of plaintiffs on the contact issue and in denying LIGA's motion for directed verdict;
2. The trial court's general damages awards to McAllister and Granger were excessive; and
3. The trial court erred in awarding expert witness fees to the physicians who testified by deposition.

I. Physical Contact
Both McAllister and Granger testified unequivocally at trial that there was contact between Granger's vehicle and Doe's vehicle. There were no other eyewitnesses. LIGA presented the testimony of Robert A. White, the Louisiana State Police officer who investigated the accident. White interviewed plaintiffs at the scene. He testified: "My understanding of the wreck was there was no contact between the two vehicles, but that vehicle one had forced her off the road. She had tried to avoid contact and was forced off the road to the right." However, plaintiffs explained this inconsistency by testifying they were in shock when they spoke to White.
Plaintiffs testified Doe's vehicle struck the left rear panel of Granger's vehicle and left a small dent. LIGA introduced a photograph of Granger's vehicle which it contends shows no damage to that portion of the car. Due to the poor quality of the photograph, however, it is impossible to determine whether there is a dent or not.
LIGA contends the plaintiffs' unsupported testimony is insufficient to establish contact by a preponderance of the evidence. LIGA cites the cases of Trapani v. State Farm Mutual Automobile Insurance Co., 524 So.2d 226 (La.App. 5th Cir.1988), writ denied, 526 So.2d 795 (La.1988); Jean v. United States Fidelity & Guaranty Co., 460 So.2d 767 (La.App. 3d Cir.1984); and April v. The Millers Mutual Fire Insurance Co., 273 So.2d 50 (La.App. 4th Cir. 1973), for the proposition that the plaintiff's testimony alone is insufficient to prove contact. In each of those cases, however, the defendant introduced evidence (photographs, expert testimony, etc.) to rebut the plaintiff's testimony.
Louisiana law requires only a preponderance of the evidence to prove contact. LIGA argues a higher burden of proof should be required in physical contact cases. We reject this argument. In this case, the trial court determined the evidence introduced by LIGA was insufficient to rebut the plaintiffs' unequivocal testimony that there was contact. The trial court was not clearly wrong in so doing.

II. Damages
Wyvonia Granger. LIGA contends the general damages award of $7,500.00 to Granger is excessive. Granger had been involved in four automobile accidents before the accident of September 16, 1988. Injuries to her neck and back in 1983 resulted in removal of cervical and lumbar disks in 1984. She had taken pain medication and muscle relaxers on an intermittent basis since 1984. She re-injured her neck and back in an accident in July, 1988. She was still under treatment for these injuries at the time of this accident.
Granger testified this accident "reaggravated" her neck and back. She saw Dr. Vincent N. Cefalu, a Hammond general practitioner, five days after the accident. She was in severe pain at that time. Granger testified that at the time of trial the pain in her back and neck was worse than *317 it was after the other accidents. Dr. Cefalu treated her for six months for persistent neck and back pain.[5] He found she definitely improved during that period, but there was "certainly a possibility that her most recent trauma will cause her to have more neck and back pain than in her pre-accident status." Based on these facts, the trial court did not abuse its discretion in awarding Granger $7,500.00 in general damages.
Virginia McAllister. LIGA contends the trial court's general damages award of $8,500.00 to McAllister is excessive and is not supported by the evidence.
McAllister injured her neck and back in an accident two months before the accident of September 16, 1988. Cefalu had diagnosed chronic cervical and lumbar strain on August 24, 1988. The accident caused an exacerbation of the neck and back pain as well as an acute sprain of the left wrist. Cefalu testified that, "mobility-speaking," she returned to her pre-September 1988 condition by November 14, 1988. He noted, however, that the pain in her neck and back could be worse because of the second accident. McAllister testified she continues to have pain in her neck and back.
McAllister also complained at trial of continued pain in her left wrist. Cefalu noted no improvement in McAllister's wrist after December 14, 1988; he recommended she see an orthopedist. She was treated by Dr. Herbert K. Plauché, a Baton Rouge orthopedist, from February 20, 1989, to May 1, 1989. He diagnosed traumatic ulnar nerve neuritis, inflammation of the ulnar nerve caused by bruising.[6] He prescribed injections of vitamin B-12, which were administered over a two-week period by her family physician in Hammond. These injections were successful in relieving most of the pain in her wrist. Plauché testified he expected her to make a full recovery, with no residual difficulties.
Although the general damages award of $8,500.00 is generous, it is not an abuse of the trial court's discretion.

III. Expert Witness Fees
LIGA contends the trial court erred in awarding expert witness fees to Cefalu and Plauché because these doctors testified by deposition. The judgment casts LIGA for "all costs, costs to include costs of medical depositions and expert fees...." LIGA contends that it paid deposition fees to these doctors at the time their depositions were taken, and that to award expert fees to them would be to allow "double-dipping."
An expert witness is entitled to a witness fee even if he testifies by deposition. Laughlin v. Breaux, 515 So.2d 480 (La.App. 1st Cir.1987). We interpret the language "costs of medical depositions" to mean the court reporters' fees, evidence of which was introduced at trial. There is no evidence in the record as to the amount of the deposition fees charged by the doctors, nor who paid the fees. If those fees were paid by LIGA, it is liable only for the difference, if any, between the amount paid at the time of each deposition and the fee set by the court. If the fees already paid by LIGA exceed the fees set by the court, LIGA owes no additional expert fees.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to defendant.
AFFIRMED.
NOTES
[1] The trial court's written reasons state McAllister was the driver and Granger was the passenger. The record, however, clearly shows the reverse.
[2] Plaintiffs also sued State Farm Mutual Automobile Insurance Company, which allegedly provided additional uninsured motorist coverage. Plaintiffs voluntarily dismissed State Farm before trial.
[3] The judgment in favor of McAllister against LIGA was reduced to $10,000.00, LIGA's liability limits.
[4] We are unable to determine how the trial court calculated its award of medical expenses to either plaintiff; the medical bills in evidence exceed these figures, and the court did not explain its calculations in its written reasons. This issue is not before us, however, since neither plaintiffs nor LIGA appealed the special damage awards.
[5] The trial court found the plaintiffs each underwent continuous treatment for more than eight months. This is incorrect; Cefalu treated Granger from September 21, 1988, through March 13, 1989, just under six months.
[6] The trial judge incorrectly states in its written reasons for judgment that Plauché treated McAllister for carpal tunnel syndrome. Plauché suspected carpal tunnel syndrome on the first visit, but subsequent nerve conduction studies which showed no nerve damage ruled out that diagnosis.