I2FOGG, Judge.
Dedra Doiron brought this personal injury action against Wal-Mart Stores, Inc., for damages sustained in a slip and fall accident which occurred on October 5,1992. The trial judge ruled in favor of Ms. Doiron; Wal-Mart appeals.
*251 Dedra Doiron and her sister-in-law, Mitzie Doiron, went to Wal-Mart on October 5,1992 to buy personal, household and Halloween items. Upon entering the store, the sisters-in-law separated to shop on their own. Mit-zie Doiron briefly visited the Halloween section, but left quickly to go to another part of the store. Shortly thereafter, the appellee made her way to the Halloween section. Once there, she asked a Wal-Mart employee where to find a particular kind of candy and the costumes. The Wal-Mart employee showed her both items and, then, remained on that aisle to straighten candy on a shelf. The aisle where the costumes were stored was being decorated for the Halloween holiday by another Wal-Mart employee who was standing on a ladder hanging streamers.
As the appellee was looking at the costumes, she stepped on a costume that was hanging on the floor, slipped and fell to the floor. Although no one saw her fall, two employees saw her on the floor immediately after the fall. The store manager was paged to the scene. He called 911 and the appellee was taken to the hospital by ambulance where she was treated and released. Shortly after the accident, the manager took pictures of the scene. Subsequently, Ms. Doiron was treated by several doctors for the injury and underwent a laminectomy for a disc herniation at C-5 and C-6:
The trial court rendered judgment in favor of Ms. Doiron; Wal-Mart appeals, contending the trial court erred in determining that it had constructive notice of the hazardous condition under LSA-R.S. 9:2800.6.
The accident in this case occurred on October 5, 1992. Thus, the applicable burden of proof for a plaintiff in a slip and fall case is set forth in LSA-R.S. 9:2800.6, as amended by 1990 La Acts RNo. 1025, Sec. 1, effective September 1, 1990. The statute provides as follows:
§ 2800.6. Burden of proof in claims against merchants
A.A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
After the enactment of the above statute, floor debris does not create a presumption of negligence. However, a patron in a self-service store reasonably assumes that the aisles are clear for passage and focuses on the displayed merchandise, not the pathway. Perez v. Wal-Mart Stores, 608 So.2d 1006 (La.1992).
In the instant case, the Department Manager, Earthy Jackson, testified that on the day of the accident it was her job to do the zoning in the seasonal aisle. That is, she was responsible for checking the aisles and counters for any foreign objects; if something was out of place, it was her job to see to it that it was returned to its proper location. Jackson testified that at 3:45 |4p.m., the *252 approximate time of the accident, she had just finished zoning the aisle that housed the costumes and that none of the costumes were on the floor. However, she admitted that if an adult costume were hung on the children’s costume rack it would be too long and could hang onto the floor.
Lawrence Armstead, a stockman for Wal-Mart, also testified. On the day of the accident, he completed safety sweeps of the store at 11:00 a.m. and 2:00 p.m. He testified that at that time no costumes were on the floor. At the time of the accident, he was hanging streamers on the costume aisle. He stated that for the thirty minute period prior to the accident he did not notice any Wal-Mart employees on that aisle. When questioned about the pictures taken by the store manager right after the accident, Armstead testified that they accurately reflected the scene. Those pictures clearly show long costumes hanging on the children’s costume rack and spilling onto the floor.
The store manager, David Spence, Sr., testified that he went to the scene immediately after the accident. After he assisted Ms. Doiron and she was taken to the hospital, he took pictures and completed the accident report. The pictures show costumes hanging onto the floor and he testified that the pictures were correct. Further, the accident report named Halloween costumes as the product involved in the accident. He also testified that when he walked to the scene of the accident, the area was cluttered with costumes.
Another Wal-Mart employee, Elizabeth Domingue, testified that Ms. Doiron asked her where a certain type of Halloween candy was located. Once she showed her where it was, Ms. Doiron asked where the costumes were. Domingue then took Ms. Doiron to the costumes and stayed on that aisle. She turned to straighten some candy on the shelf and when she turned back around she saw Ms. Doiron on the floor. Mitzie Doiron testified that when she went to the costume aisle she noticed the costumes on the floor. Thomas Allen, a customer in the store, testified that he spoke to the appellee right after the accident and she said she slipped on costumes.
IsFinally, Dedra Doiron testified that once she found the candy she was looking for she went to look at the costumes. As she reached to pick one of the children’s costumes off the rack, her boot hit one of the costumes that was hanging on the floor and she flew back and jarred herself. She did not notice the costumes hanging onto the floor before she fell. She reviewed the photographs in evidence and stated they accurately reflected the scene.
Citing the testimony of the Wal-Mart employees, Wal-Mart argues it did not have constructive notice of the condition and did not fail to exercise reasonable care. The appellant then states the only logical inference is that the plaintiff created the condition which caused her own mishap. However, this reasoning completely overlooks the testimony of Elizabeth Domingue who stated that she showed Dedra Doiron to the aisle and stayed there with her, only turning around to straighten some candy before she saw Doiron on the floor. Clearly, there was not enough time for the appellee to take adult costumes off the higher rack and place them on the lower children’s rack so that they would hang on the floor.
The plaintiff has the burden of proving she slipped and fell due to a condition on defendant’s premises which presented an unreasonable risk of harm, that the risk of harm was reasonably foreseeable, that the defendant either created the condition or had actual or constructive notice of the condition prior to the occurrence, and that the defendant failed to exercise reasonable care. LSA-R.S. 9:2800.6B; Welch v. Winn-Dixie Louisiana, 94-2331 (La. 5/22/95); 655 So.2d 309.
For an appellate court to reverse a trial court’s factual findings, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987). The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its *253 entirety to determine whether the trial 16Conrt’s finding was clearly wrong or manifestly erroneous. Stobart v. State, Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart, 617 So.2d at 882. Even when the reviewing court feels its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed where conflict exists in the testimony. Rosell, 549 So.2d at 844. The trier of fact may accept or reject any part of a witness’ testimony. Dominici v. Wal-Mart Stores, 606 So.2d 555 (La.App. 4 Cir.1992). The trier of fact may choose to reject all of the testimony of any witness or may believe and accept any part or parts of a witness’ testimony and refuse to accept any other part or parts thereof. LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3 Cir.1990), writ denied, 575 So.2d 391 (La.1991); Harrigan v. Freeman, 498 So.2d 58 (La.App. 1 Cir.1986). Only when documents or objective evidence so contradict a witness’ story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’ story, may the appellate court find manifest error. Rosell, 549 So.2d at 844-845. We have examined the record in the instant case and cannot say that the trial court committed manifest error in his determination. The testimony and photographs support its conclusion.
Additionally, the appellant asserts that the trial court manifestly erred in finding Ms. Doiron’s injuries were caused by the accident. The appellant provided evidence that Dedra Doiron abused prescription drugs and lied to her treating physicians. However, she admitted that she had a problem and sought assistance through a chemical dependency unit. The fact that Dedra Doiron suffered from a chemical dependency does not prove that she was not injured in her fall at Wal-Mart.
The record reflects that Dedra Doiron suffered several ^accidents prior to the one at issue as well as several physical assaults. She admitted that she suffered some injuries prior to her fall at Wal-Mart; however, she stated that her physical problems were worse after the fall. She testified that after the fall she experienced numbness for the first time, lost all feeling in her right hand and had a burning sensation in her arm.
Her treating physician, Dr. James E. Hines, III, testified that he had treated Ms. Doiron prior to the accident at Wal-Mart and was aware of some of her other accidents; however, her complaints were worse after the fall at Wal-Mart. After the fall, he referred Ms. Doiron to Dr. Warren Williams, a neurosurgeon, who ordered a MRI, which showed a disc herniation at C-5 and 6. When questioned about Ms. Doiron’s drug usage, he stated he was aware of it and had referred her to a rehabilitation hospital. Although he did not know that she was seeking drugs from other physicians at the time of his treatment of her, he opined that medication was necessary to address her pain, not just to accommodate a drug problem. Further, he stated that if she had not had a positive MRI after the accident, his course would have been very different and that the slip and fall aggravated a problem with her neck.
By deposition, Dr. Williams stated that he was not aware of Ms. Doiron’s prior accidents and based on the history provided by Wal-Mart’s attorney, it was more likely that one of the preceding accidents would be responsible for her symptoms.
The same standard of review applies to our examination of the trial court’s findings regarding medical causation. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883. Accordingly, the trial court’s finding that Dr. Hines’ view that the slip and fall at Wal-Mart aggravated a condition is not clearly wrong.
Finally, appellant argues that the trial court erred as a matter of law in awarding expert fees to the plaintiff for the deposition testimony of Dr. Williams. Appellant argues that the cover page of the deposition *254 indicates that the testimony of Dr. | gWilliams was “taken by the defendants pursuant to notice” and that the plaintiff paid nothing for the deposition. Therefore, it was an abuse of discretion on the part of the trial court to award these costs. It is well-established that an expert witness is entitled to a witness fee even if he testifies by deposition. Laughlin v. Breaux, 515 So.2d 480 (La.App. 1 Cir.1987). There is no evidence in the record as to the amount of the deposition fees charged by Dr. Williams, nor who paid the fees. If those fees were paid by Wal-Mart, it is hable only for the difference, if any, between the amount paid at the time of the deposition and the fee set by the court. If the fees already paid by Wal-Mart exceed the fees set by the court, Wal-Mart owes no additional expert fees. McAllister v. Champion Ins. Co., 602 So.2d 314 (La.App. 1 Cir.1992).
For the foregoing reasons, we affirm the judgment of the trial court. Wal-Mart is assessed ah costs of this appeal.
AFFIRMED.
LeBLANC, J., concurs in part and dissents in part and assigns reasons.