628 So.2d 222 (1993)
Herbert L. & Gloria Jane Cerda WHITAKER, Plaintiffs-Appellants
v.
Daniel L. MULLINAX, et al., Defendants-Appellees.
No. 25046-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1993.
Rehearing Denied January 13, 1994.
*225 Smitherman, Lunn, Chastain & Hill by W. James Hill, III, Shreveport, for plaintiffs-appellants.
Mayer, Smith & Roberts by Paul R. Mayer, Jr., Shreveport, for defendant-appellee, Independent Fire Ins. Co.
Rountree, Cox & Guin by Dale G. Cox, Shreveport, for defendant-appellee, Daniel L. Mullinax, Avis Leasing Corp., Nat. Union Fire Ins. Co. and Ricoh Corp.
Before MARVIN, LINDSAY, BROWN, STEWART and WILLIAMS, JJ.
WILLIAMS, Judge.
This is a personal injury action arising from a rear end automobile collision. The plaintiffs, Herbert Whitaker and his wife, Gloria Whitaker, filed this lawsuit against Daniel Mullinax, the driver of the other automobile, his employer, Ricoh Corporation (Ricoh), and its automobile liability insurer, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union). Plaintiff's also named as defendants, Independent Fire Insurance Company (Independent), their automobile liability insurer, and *226 D.L. Peterson Trust and Avis Leasing Corporation.[1]
After a trial on the merits, the jury found that the accident was caused by the negligence of Mullinax. It awarded the plaintiffs $3,634.00 in special damages. No award was made for general damages, permanent disability, future medical expenses or the loss of future earning capacity. The jury also found in favor of Independent and against plaintiffs, dismissing plaintiffs' claims with prejudice. Plaintiffs were taxed with all costs of the litigation.
Plaintiffs appeal the jury's assessment of damages and costs. Additionally, they complain that the trial court erroneously excluded evidence during the trial and prematurely dismissed some of their claims.
Independent answers the appeal requesting damages, attorney's fees and costs based on its contention that the plaintiffs instituted a frivolous appeal as to that portion of the judgment dismissing it from the suit.
For the reasons expressed, we amend the judgment of the trial court, and as amended we affirm.

FACTS
On August 27, 1987, at approximately 12:44 p.m., Herbert Whitaker was driving his 1983 Lincoln Continental automobile on Barksdale Highway, near Schex Street, in Bossier City, Louisiana. Mr. Whitaker was traveling with the flow of traffic when he was struck from behind by a 1987 Chevrolet Celebrity automobile that was being driven by Daniel Mullinax. The force from the impact broke the front seat on the driver's side of Mr. Whitaker's automobile off of its base. The total property damage was estimated at trial to be in excess of $11,000.00. Mr. Whitaker was transported, by ambulance, to the emergency room for neck and thoracic pain. X-rays revealed no broken bones, and Mr. Whitaker was released the same day. During Mr. Whitaker's follow up visits, Drs. Thomas Edwards and Don Burt, orthopedic surgeons, diagnosed the cause of Mr. Whitaker's pain as moderate cervical and thoracic strain. Mr. Whitaker was conservatively treated with physical therapy and medication. He underwent physical therapy until September 30, 1987.
Mr. Whitaker did not seek medical treatment between the dates of September 30, 1987 and December 29, 1987. During this time, he continued to work as a pharmacist but he complained that his pain worsened. On December 29, 1987, Mr. Whitaker saw Dr. Barry M. Oscherowitz, a specialist in internal medicine and gastroenterology, complaining of neck pain, headaches, tingling and pain radiating down his legs. Dr. Oscherowitz referred him to Dr. Warren A. Long, a neurosurgeon. Dr. Long performed a myelogram and diagnosed Mr. Whitaker's condition as left radiculopathy secondary to cervical spondylosis at C5-6. The myelogram also revealed Mr. Whitaker's preexisting degenerative disc disease at C5-6, C6-7 and L4-5. Before the automobile accident, Mr. Whitaker had a documented history of degenerative disc disease dating back to 1984. Dr. Long recommended, and Mr. Whitaker underwent, anterior cervical fusion and diskectomy at C5-6 bilaterally in January 1988. Mr. Whitaker reported a decrease in neck pain following his surgery. However, he testified that he continued to experience intense pain in his back and lower extremities.
On April 4, 1988, Mr. Whitaker was permitted to return to work full-time without any restrictions. However, on March 11, 1988, Mr. Whitaker suffered a grand mal seizure and required hospitalization at the Bossier Medical Center for approximately three days. Mr. Whitaker had a history of seizures dating back to 1972. Following the March 11, 1988 seizure, Mr. Whitaker experienced a psychotic episode on March 20, 1988 during which he threw a bench through a window in his home, bent the burglar bars that were on the window, jumped through the window and ran down the street in his underwear while firing a handgun. Mr. Whitaker was apprehended by the police in a nearby drainage ditch. He sustained lacerations *227 to his arms and his left leg. Because of this incident, he was hospitalized for psychiatric evaluation from March 20, 1988 through April 6, 1988 at the Brentwood Humana Hospital (Brentwood).
Mr. Whitaker returned to full-time employment after he was released from Brentwood. However, he complained of leg pain after standing for four to five hours. On July 1, 1988, a CAT scan revealed a bulging and grade one spondylosis at L4-5. Dr. Long diagnosed Mr. Whitaker's problem as left radiculopathy secondary to retrolisthesis and scoliosis at L4-5 bilaterally. Dr. Long testified at trial that he told Mr. Whitaker to continue without surgery for as long as he could because the outcome of lumbar surgery was less certain than cervical surgery, i.e., it could alleviate his pain or cause more problems. Mr. Whitaker continued working until he underwent lumbar disc surgery on September 12, 1988. Dr. Long performed a laminectomy and posterior lumbar interbody fusion at L4-5. Steffi plates and pedicle screws were inserted to reinforce the fusion. Mr. Whitaker convalesced from surgery until he returned to work on March 23, 1989. He continued to complain of pain, discomfort and muscle weakness after standing or working for more than a few hours.
On November 7, 1990, Mr. Whitaker tripped and fell approximately four feet. He went to the emergency room of Bossier General Hospital and was admitted into that facility. The physicians kept him at bed rest, ordered muscle relaxants and started him on slow ambulation. Mr. Whitaker was released three days later, on November 10, 1990.

DISCUSSION
Mr. Whitaker was awarded some of his medical expenses and lost wages but was denied an award of general damages. Mr. Whitaker argues that the jury should have awarded him all of his special damages. He also contends that it is legal error for a jury to award special damages for a party's medical expenses but deny general damages.
The jury announced its verdict in the form of answers to special interrogatories. It found that the defendant, Daniel L. Mullinax, was negligent, and his negligence was a cause in fact of any harm suffered by the Whitakers. The jury awarded Mr. Whitaker $2,000 for past medical expenses, $1,634 for loss of past earnings and declined to award damages for past and future physical pain and suffering, past and future mental anguish, future medical expenses, loss of future earning capacity, or permanent disability. The jury further declined to award Mrs. Whitaker damages for loss of consortium, service and society.
It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable inferences of fact should not be disturbed upon review, even though the appellate court may believe that its evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court's or the jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Nejame v. Hamiter, 614 So.2d 848 (La.App.2d Cir.1993).

MEDICAL EXPENSES
The jury apparently limited the amount of its award to cover only medical expenses incurred and wages lost immediately following the accident. Apparently, the jury concluded that Mr. Whitaker's subsequent surgeries were caused by his preexisting degenerative disc disease rather than by the automobile accident. After reviewing the testimony and the evidence, we find that the jury was clearly wrong in determining that there was no causal connection between the accident and Mr. Whitaker's cervical and lumbar fusion.
*228 It is well settled that a tortfeasor takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Bacle v. Wade, 607 So.2d 927 (La.App.2d Cir.1992). When a defendant's negligent act aggravates a preexisting injury, he must compensate the victim for the full extent of the aggravation. Bacle, supra. A causal link between the negligence and the degree of aggravation must be established. Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946 (La.App.2d Cir. 1991).
Mr. Whitaker had degenerative disc disease that periodically required medical treatment before the accident. However, it is apparent from the medical testimony that Mr. Whitaker's preexisting degenerative disc disease was aggravated by the automobile accident. The medical evidence is uncontroverted that the automobile accident made the anterior cervical fusion and the posterior lumbar interbody fusion necessary. Dr. Long, the neurosurgeon who performed the cervical and lumbar fusions, testified that although Mr. Whitaker probably would have required surgery at some time in the future, the accident accelerated his condition and made the surgeries a necessity rather than a future possibility. Defendants failed to introduce evidence that contradicted Dr. Long's assessment of Mr. Whitaker's injuries and its causation. Therefore, the jury was clearly wrong in failing to award damages consistent with the aggravation of Mr. Whitaker's preexisting degenerative disc disease.
However, the jury could have reasonably concluded that Mr. Whitaker's psychotic episode in March 1988, and subsequent hospitalization at Brentwood, were unrelated to the August 1987 automobile accident. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
The principal treating psychiatrist, Dr. Dean Robinson, was uncertain about the etiology of the psychotic episode. He offered two possible explanations: (1) a brief reactive psychosis secondary to emotional, psychiatric factors; or (2) a delirium secondary to organic factors, including withdrawal from medication. Dr. Robinson testified that the connection between the accident and Mr. Whitaker's psychotic episode was tenuous. When Mr. Whitaker was hospitalized for psychiatric treatment, his family initially alleged that he had a serious substance abuse problem. However, the Whitakers subsequently recanted that information. Dr. Robinson stated that if he gave the Whitakers the benefit of the doubt, that they were not lying when they recanted the information that was given concerning a substance abuse problem when Mr. Whitaker was hospitalized, then there was a tenuous connection of fifty-one percent that the stress caused by the physical difficulties that arose as a result of the accident is related to the psychotic episode. Dr. Robinson further testified that if he assumed that the Whitakers were lying when they recanted their information, i.e., their initial report of Mr. Whitaker's substance abuse problem was accurate, then the automobile accident is not related to the psychotic episode. The jury also heard Mr. and Mrs. Whitaker recant their initial report during trial. When there is a conflict in the testimony, reasonable inferences should not be disturbed upon review, even though the appellate court may believe that its evaluations and inferences are as reasonable. Rosell, supra. Here, given Dr. Robinson's tenuous, conditional connection between the automobile accident and Mr. Whitaker's psychotic episode, the jury was not clearly wrong in its finding that the psychotic episode was unrelated to the accident.
Mr. Whitaker contends his award for past medical expenses should include the costs incurred when he was hospitalized after a fall at work on November 7, 1990. He further asserts that he is entitled to recover future medical expenses associated with the anticipated lumbar surgery resulting from that fall. Plaintiff's expert, Dr. Long, testified that the November 7, 1990 fall was unrelated to the automobile accident. Thus, the *229 jury was not clearly wrong in concluding that Mr. Whitaker's fall was unrelated to the automobile accident.
In summary, Mr. Whitaker is entitled to recover the medical expenses that he incurred up to and including the cervical fusion in January 1988. He is also entitled to recover the medical expenses associated with the lumbar fusion. However, the medical expenses incurred as a result of his hospitalization at Brentwood and his anticipated lumbar surgery are not recoverable. Mr. Whitaker is entitled to $35,209.05 for his medical expenses.

LOST WAGES
Beverly Cox, a human resources representative for Jack Eckerd Corporation, testified that Mr. Whitaker lost a gross figure of approximately $42,225.54 in earnings due to his leave of absences that were necessitated by his surgeries. Dr. Melvin Harju, a professor of economics and finance, adjusted Ms. Cox's calculations with loss bonuses, loss profit sharing and other monetary benefits. Based on a range of bonuses supplied by Ms. Cox, Dr. Harju concluded that Mr. Whitaker lost $37,046 to $38,203 in net wages and other monetary fringe benefits. Therefore, this court will allow Mr. Whitaker to recover $37,046 in lost earnings.
Mr. Whitaker also contends he should have been awarded damages for loss of future earning capacity. The factors to be considered in determining loss of future income include the plaintiff's physical condition before and after his injury, his age and life expectancy prior to and after the accident, his previous earnings, his work record, the amount the plaintiff probably would have earned absent the injury, and the probability that he would have continued to earn wages over the balance of his working life. Keeth v. Dept. of Public Safety & Transportation, 618 So.2d 1154 (La.App.2d Cir.1993); Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App.2d Cir.1990), writ denied, 573 So.2d 1135 (La.1991).
Dr. Harju calculated that at the time of trial the present value of Mr. Whitaker's lost future earning capacity was $642,291. This calculation was premised on the assumption that Mr. Whitaker had ceased working at the time of trial, would never return to work and has a "work life" of 12.3 years.
When Dr. Long was asked if he recommended that Mr. Whitaker quit his job, he replied Mr. Whitaker should continue to work. He stated that Mr. Whitaker did not have many problems when he worked for four or five hours at the pharmacy in Haughton; however, his schedule at Eckerd aggravated his back problems. Ms. Cox testified that Mr. Whitaker has continued to work for Eckerd Corporation, and he was earning more money at the time of trial than he was earning when the automobile accident occurred.
Awards of loss of future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Thus, the courts must exercise sound judicial discretion in determining these awards and render awards that are consistent with the record and that work an injustice on neither party. Anderson, supra. After proper consideration, we are reluctant to award an amount for loss of future earnings. The evidence shows that Mr. Whitaker has continued to work for Eckerd. There is nothing in the record that indicates that Mr. Whitaker will quit working, or reduce the number of hours that he works, at any specific time in the future. An award under these circumstances would be too speculative and totally unsupported by the record. We find no error in the jury's finding on this issue.

GENERAL DAMAGES
When the trier of fact itemizes damages for medical expenses and omits damages for personal injury, pain and suffering, the error of law is apparent. Richard v. Dollar General Store, 606 So.2d 831 (La.App. 2d Cir.1992), writ denied, 608 So.2d 197 (La. 1992). Defendants argue that the jury could have reasonably concluded that in light of Mr. Whitaker's prior significant history of symptoms, he was prudent in seeking emergency room care and follow up visits with Drs. Edwards and Burt. Defendants further contend that the jury could have reasonably *230 concluded that Mr. Whitaker would have missed work for two weeks in order to secure this treatment. However, as discussed above, the jury was clearly wrong in failing to find that Mr. Whitaker's preexisting condition was aggravated by the accident. Furthermore, the cases that the defendants rely upon in support of their argument are distinguishable. The jury's award in Morris v. New Orleans City Park Improvement Ass'n, 586 So.2d 629 (La.App.4th Cir.1991), writ denied, 589 So.2d 1074 (La.1991) was a lump sum award rather than one for itemized damages. In Coleman v. U.S. Fire Ins. Co., 571 So.2d 213 (La.App. 3d Cir.1990), the jury awarded the plaintiff $300 in special damages for medical expenses incurred after an accident but did not award general damages to the plaintiff. The Third Circuit found that the jury's verdict was not inconsistent because the jury chose to believe the medical evidence that showed that the plaintiff was not injured and that her complaints of neck pain and headaches were not credible. In affirming the verdict, the Court held that the jury could have reasonably concluded that the plaintiff was not injured as a result of the accident, but that she was prudent in seeking medical treatment to ensure that she was not injured.
General damages are those that may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle that cannot be definitively measured in monetary terms. Anderson, supra. The primary considerations in the assessment of damages are the severity and duration of the injured party's pain and suffering. Tobin, supra. When making an initial award of damages, an appellate court is not limited to either the highest or lowest amount of the reasonable range of awards that would have been affirmed on appeal. An appellate court's responsibility is to award an amount that is fair and just for the damages supported by the record. Wall v. American Employers Insurance Co., 386 So.2d 79 (La.1990); Morris v. Owens-Illinois, Inc., 582 So.2d 1349 (La. App. 2d Cir.1991), writ denied 588 So.2d 1119 (La.1991). Here, plaintiff has undergone two surgeries and the pain and suffering associated therewith. After a careful review of the entire case, we feel that an award of $100,000 will compensate Mr. Whitaker for his pain and suffering and mental anguish.

LOSS OF CONSORTIUM
Mrs. Whitaker contends the jury erred in denying her claim for loss of consortium. The claim for loss of consortium is broken down into several components: (1) love and affection; (2) society and companionship; (3) sexual relations; (4) the right of performance of material services; (5) the right of support; (6) aid and assistance; and (7) felicity. Proof of any of these elements is sufficient for an award of consortium. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir. 1985).
In the instant case, Mrs. Whitaker testified that her husband could not play cards after the accident because of the numbness in his hands. She also stated that they no longer go dancing or to the movies. Since the accident, they no longer have sexual relations. However, Mr. Whitaker had back problems before the accident and testicular surgery. It is clear that Mrs. Whitaker demonstrated some loss of society and companionship as well as sexual relations. After reviewing the jurisprudence, we find that $5,000 is an appropriate award for loss of consortium. Compare Warner v. Great Atlantic & Pacific Tea Co., 583 So.2d 61 (La. App. 2d Cir.1991); Cascio v. City of Monroe, 530 So.2d 1170 (La.App. 2d Cir.1988).

DIRECTED VERDICTS
The plaintiffs contend the trial court erred in granting the defendants' motion for a directed verdict on Mr. Whitaker's claim for an eye injury and Mrs. Whitaker's claim for emotional distress.
LSA-C.C.P. Art. 1810 provides:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not *231 been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
This Court recently summarized the law applicable to directed verdicts in Adams v. Travelers Ins. Co., 589 So.2d 605 (La.App. 2d Cir.1991). There, we held that a motion for a directed verdict is appropriately granted when, after considering all the evidence, with all reasonable inferences most favorable to the non-moving party, it is clear that the facts and inferences point so overwhelmingly in favor of granting a direct verdict, that reasonable jurors could not arrive at a contrary verdict. If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the case submitted to the jury. Furthermore, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claim. Adams, supra; Moore v. Aetna Casualty and Surety Company, 454 So.2d 1273 (La.App.2d Cir. 1984).
The trial court granted the defendants' motion for a direct verdict on Mrs. Whitaker's claim for emotional distress because she had failed to adequately state a claim under Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990). In brief, Mrs. Whitaker contends that she should have been allowed to introduce evidence concerning her claim because she saw her husband immediately after the accident and was emotionally distressed. She claims that she saw him in excruciating pain, and her anguish was so severe that she became physically ill. Mrs. Whitaker bases her claim for emotional distress on this set of facts for the first time in her appellate brief; her testimony at trial does not support this argument. Appellate briefs, and facts referenced therein that are not contained in the record, are not part of the record on review and cannot be considered. D'Arbonne Bank & Trust Co. v. James, 597 So.2d 165 (La.App. 2d Cir.1992).
The Louisiana Supreme Court set forth the following limitations to third persons recovering damages for mental pain and anguish:
1. The claimant must view the accident or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition;
2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience;
3. The emotional distress sustained must be serious and reasonably foreseeable; and
4. The claimant must have a close relationship with the victim.
Lejeune, supra.
At trial, Mrs. Whitaker claimed that her husband's March 1988 psychotic episode, which she witnessed at their home, caused her to experience anxiety that affected their marital relationship. When her husband was hospitalized for surgery in September 1988, her anxiety escalated and she also began to experience nausea and insomnia which required medical treatment. Mrs. Whitaker contended that her claim under Lejeune, supra, arose when she viewed her husband's psychotic episode that was caused by stress associated with his August 1987 automobile accident. In granting the defendant's motion for a directed verdict, the trial court ruled that the events Mrs. Whitaker claims caused her to be physically ill were too far removed from the automobile accident.
We agree with the trial court. Moreover, this court has affirmed the jury's finding that Mr. Whitaker's psychotic episode is unrelated to the automobile accident. Since damages for the psychotic episode is nonrecoverable, then Mrs. Whitaker is not entitled to recover for the emotional distress that she claims she suffered as a result of watching her husband's psychotic episode. The trial judge properly granted the directed *232 verdict on Mrs. Whitaker's claim for damages for emotional distress.
The trial judge also granted the defendants' motion for a directed verdict on Mr. Whitaker's claim for damages for an eye injury, which he asserts he developed after the accident. In Housley v. Cerise, 579 So.2d 973 (La.1991), the Supreme Court stated:
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of casual connection between the accident and the disabling condition.
Mr. Whitaker offered the trial deposition of Dr. Chesley Gregory, an optometrist, as proof of his condition and its causation. After reviewing Dr. Gregory's deposition, the trial judge found that no reasonable jury could conclude that Dr. Gregory established a causal connection between Mr. Whitaker's eye condition and the accident.
On September 18, 1987, Mr. Whitaker visited Dr. Gregory, complaining of "blurred vision, pain in his left eye when he changed his vision from near to distance and that his glasses had been mangled in an automobile accident." During his examination, Dr. Gregory noted that Mr. Whitaker's left eye did not dilate or constrict in the same way that it had during previous examinations. Dr. Gregory believed Mr. Whitaker's eye condition was a positive Marcus-Gunn, a type of neurological deficit. In his trial deposition, Dr. Gregory testified it was possible that the automobile accident could have caused Mr. Whitaker's eye problems.
The test for determining the causal relationship between an accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that the subsequent injuries were caused by the trauma suffered in the accident. Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2d Cir.1992). Plaintiff's expert witness failed to make the necessary casual connection between the automobile accident and Mr. Whitaker's eye condition. Therefore, the trial judge properly granted the directed verdict.

COURT COSTS
The Whitakers also argue that the trial court should have assessed costs against the defendants. Although the jurors found in favor of the Whitakers on the issue of causation, the trial court assessed all court costs against them. When a prevailing party is taxed with the costs of litigation, it is usually because the party in some way incurred additional costs pointlessly or engaged in other conduct that justifies an assessment of costs against that litigant. Freeman v. Garcia, 495 So.2d 351 (La.App. 2d Cir.1986).
In the instant case, there has been no showing that the Whitakers caused cost to be incurred pointlessly, or engaged in other conduct that justified the assessment of costs against them. The general rule is that costs are to be paid by the party cast in judgment. Jerome v. Duggan, 609 So.2d 1119 (La.App. 2d Cir.1992). Since we have amended the jury's award in favor of the plaintiffs, the defendants are hereby assessed all costs of the litigation.

FRIVOLOUS APPEAL
Defendant, Independent Fire Insurance Company, answered the appeal to request damages for a frivolous appeal as well as attorney's fees and costs. Independent argues that the Whitakers should not have included it as a defendant in the lawsuit because Mr. Mullinax was neither uninsured nor underinsured.
Damages for a frivolous appeal are allowed only where it is clear that the appeal does not present a substantial legal question, or if it is obvious that the appeal was taken for delay or that counsel does not seriously believe in the view of law he advocates. See LSA-C.C.P. Art. 2164; Owens v. Jackson, 550 So.2d 359 (La.App. 3d Cir.1989).
*233 Independent issued a policy of automobile liability insurance to the Whitakers which was in effect at the time of this automobile accident. The declarations page shows that there was uninsured motorist coverage in the amount of $25,000 per person, and $50,000 per accident.
The Whitakers introduced into evidence a certified copy of an insurance policy issued by National Union to Avis with liability coverage limited to $1 million. A commercial umbrella insurance policy issued by Tokio Marine and Fire Insurance Company (Tokio) to Ricoh was also filed into evidence. The policy issued by Tokio shows that it provides $5 million in excess liability coverage, over and above the $1 million provided by National Union.
In the "Response to Request for Admission of Facts" filed on behalf of Mr. Mullinax, Avis, National Union and Ricoh, the Whitakers' claim appeared to be excluded. An endorsement by Tokio stated that its commercial umbrella policy "does not apply to any liability assumed by any insured under any contract or agreement and the company has no obligation to defend or indemnify any insured for any liability arising out of such contract or agreement with ... Avis Leasing [and] D.L. Peterson Trust." The vehicle that Mr. Mullinax was driving at the time of the accident was leased by Avis to Ricoh.
Counsel for Mr. Mullinax, Avis, National Union and Ricoh filed a supplemental response and attached to it a letter written by Caesar J. Milch, Litigation Specialist, Non-Marine Claims Department for Tokio, dated November 20, 1991. In the letter, Mr. Milch opined that Tokio provides $5 million of liability coverage above and beyond the primary coverage provided by National Union "for the loss in question." Mr. Milch reiterated his position in a second letter dated December 2, 1991.
A review of the record indicates that the Whitakers were justified in their decision to include Independent in the lawsuit. The Whitaker's accident was clearly and unambiguously excluded by an endorsement in Tokio's umbrella policy. There was no evidence presented for plaintiffs to conclude that Mr. Milch had the authority to waive a policy exclusion. We are not persuaded that the Whitakers did not have the right to maintain its claim against Independent. Therefore, Independent's request for damages, attorney's fees and costs is denied.

CONCLUSION
For the reasons expressed above, we amend the jury's award to Mr. Whitaker to the following: $35,209 for past medical expenses; $37,046 for loss of earnings; and $100,000 in general damages. Mrs. Whitaker is hereby awarded $5,000 for loss of consortium. Costs of this appeal and of the proceedings in the trial court are to be borne by the defendants.
AMENDED AND, AS AMENDED, AFFIRMED.
LINDSAY, J., concurs in part, dissents in part and assigns reasons.
LINDSAY, Judge, concurring in part and dissenting in part.
I concur in part with the majority opinion. However, I dissent in part because, in reversing the jury verdict, the majority has impermissibly substituted its judgment for the factual findings of the jury which were based upon the evidence of record.
Following this accident, plaintiff was taken to the emergency room complaining of neck and back pain. He was treated and released. Thereafter, he was treated by his physicians who diagnosed moderate cervical and lumbar strain. He took physical therapy through September, 1987, and then returned to work. It was not until December, 1987 that the plaintiff reported additional complaints of neck pain and headaches. These problems were related to his symptomatic, preexisting degenerative disc disease, the same problems he experienced prior to the accident.
For several years prior to this accident, plaintiff had received extensive medical care due to severe cervical and lumbar pain. On occasion, plaintiff's pain was so severe that he could not work. On one of his medical visits, he was in such pain that he could not complete a medical questionnaire.
*234 The record shows that x-rays of plaintiff's neck and back, taken in 1985, prior to the accident, were almost identical to x-rays taken in January 1988, when he underwent surgery for a cervical fusion, and subsequently surgery for his lumbar disc, which was performed in September, 1988.
The record shows that plaintiff's preexisting severe lumbar and cervical pain was not substantially worsened by the moderate injury he suffered in this accident. Therefore, I disagree with the majority holding that the two surgeries and plaintiff's absence from work were related to the automobile accident.
Following an 11 day trial, although the jury awarded special damages totaling $3,634.00, it awarded no damages whatever for pain and suffering, past or future, or additional medical expenses. Because the jury found that plaintiff was entitled to special damages, I agree that the jury's failure to award any general damages was error. The issue is the proper amount to be awarded for general damages.
It is clear the jury was convinced that the plaintiff, who had significant preexisting, symptomatic cervical and lumbar pain, was in basically the same condition both before and after the accident. The jury clearly found that plaintiff suffered for only about two months immediately following the accident, during which time he convalesced from a moderate cervical and lumbar strain.
Several factors support the jury's conclusion. Plaintiff's credibility was very suspect. The medical testimony did not clearly support plaintiff's claim. Plaintiff was suffering exactly the same problems prior to the accident that he suffered following the accident, including nerve root involvement. Plaintiff did not seek treatment between late September until mid-December, 1987.
The jury was called upon to determine whether the accident aggravated plaintiff's preexisting conditions; the jury rejected that proposition. Therefore, in light of the very complicated medical history presented by the plaintiff, and his obvious lack of credibility, the jury's determination that he suffered a moderate cervical and lumbar strain was not clearly wrong and general damages should be awarded accordingly.
The jury also correctly determined that an award of damages for loss of consortium was unwarranted. The evidence shows that Mrs. Whitaker's problems with the marriage were unrelated to this automobile accident.
For the reasons outlined above, I respectfully dissent from the majority's finding that Mr. Whitaker's extensive surgical procedures and loss of income were caused by the accident. I also dissent from the judgment of the majority awarding damages for loss of consortium and assessing all costs against the defendants. In all other respects, I concur in the majority opinion.

APPLICATION FOR REHEARING
Before MARVIN, LINDSAY, BROWN, STEWART and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] The trial court entered a directed verdict in favor of D.L. Peterson Trust and Avis Leasing Corporation dismissing them from the lawsuit. This portion of the judgment has not been appealed.