650 So.2d 414 (1995)
Judy DUCKETT
v.
K-MART CORPORATION and ABC Insurance Company.
No. 92-CA-385.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1995.
Rehearing Denied March 17, 1995.
Hugh Penn, Frederick P. Heisler, Heisler & Wysocki, New Orleans, for plaintiff-appellant Judy Ann Duckett.
Michael Holoway, Jack E. Truitt, James A. Williams and Laura B. DeLauneville, Holoway, McQuaig & Solomon, Metairie, for defendant-appellee K-Mart Corp.
Before KLIEBERT, C.J., and WICKER and GOTHARD, JJ.

ON REMAND FROM THE SUPREME COURT
KLIEBERT, Chief Judge.
We have been remanded this case by the Supreme Court for an assessment of quantum. *415 Duckett v. K-Mart Corp., 94-0579, La. 10/17/94[1], 645 So.2d 621.
Plaintiff, Judy Duckett, slipped and fell in the aisle of K-Mart on April 20, 1989. When she fell, she broke her fall with her right hand, hyperextending her right wrist (plaintiff is left-handed). She filled out an accident report and within a few days sought medical treatment for pain and some numbness in her right wrist. Her doctor, Dr. Procell, referred her to a neurologist, Dr. Mohnot,[2] who examined plaintiff for possible nerve damage to her wrist. On June 12, 1989, Dr. Mohnot performed a nerve conduction velocity test and a needle EMG study. His findings are reprinted below.
Terminal latency of right median nerve is normal. Motor and nerve conduction velocities of right median and right ulnar nerves are normal. F-wave latencies of right median and right ulnar nerves are normal. Mild prolongation of terminal latency of right ulnar nerve is observed.
Mild slowly of sensory nerve conduction velocities of finger-to-wrist segments of right median and right ulnar nerve and forearm segment of right radial nerve are observed. Sensory nerve conduction velocities of forearm segments of right median, ulnar, and elbow segment of right ulnar nerve are normal.
Needle EMG examination of tested muscles of right upper extremities is normal.
IMPRESSION: These findings are suggestive of mild neuropathy of right median, ulnar, and radial nerves in lower forearm region. Further clinical correlation is suggested.
In a letter to plaintiff's counsel, dated June 12, 1989, Dr. Mohnot opined that these findings were minimal.
On July 10, 1989, Duckett began a course of treatment with Dr. Gordon Nutik, an orthopedist, who treated her for the next six months. Extensive wrist and arm x-rays revealed no fractures of the wrist, nor any other abnormalities. Dr. Nutik felt that the patient had sustained a soft tissue strain of the right wrist. He also noted a small ganglion cyst, approximately 2mm by 3mm, difficult to palpate because of its small size. Dr. Nutik read Dr. Mohnot's nerve study reports, but offered that he had never seen a neuropathy pattern like plaintiff's related to a trauma, but rather to a chemical condition such as diabetes. Dr. Nutik prescribed a course of physical therapy for Duckett, which the plaintiff fulfilled, going approximately three times per week.
Plaintiff saw Dr. Nutik on July 25, 1989, at which time patient noted continued wrist pain. The doctor measured both her arms and noted no atrophy of the right arm muscles, and no swelling of the wrist. The examination also revealed normal sensation to light touch, and good power of grip and pinch.
By late October, 1989, Dr. Nutik's reports show that while plaintiff had continued pain dorsally in the right wrist, she showed a normal range of motion. He ordered continued physical therapy for strengthening the hand and wrist, and indicated his desire to repeat the EMG study to presently evaluate the neuropathy.
In late November, Dr. Nutik found that plaintiff had reached a point of normal motion about the wrist and hand, and told plaintiff to discontinue physical therapy. He noted no swelling or masses in the wrist, but noted plaintiff's continued complaints of pain and occasional numbness in the fingers and wrist.
In December of 1989, Dr. Nutik's physical examination revealed normal ranges of motion, no swelling or masses in the right wrist, no actual localized area of decreased sensation about the right hand, and full muscle power of grip and pinch. It was Dr. Nutik's opinion that the patient had residual symptoms secondary to a soft tissue strain.
In January, 1990, Dr. Nutik discharged Duckett from his care. His last examination of the plaintiff showed no pain or decrease in motion to her right shoulder. Palpation dorsally *416 to the right wrist revealed pain. There was no evidence of any swelling or masses about the wrist joint. Dorsiflexion and palmar flexion were both full and normal. Radial and ulnar deviation were possible to normal limits. There was normal sensation to light touch. Muscle power was full and there was no atrophy of the upper extremities or circumferential measurement.
Duckett was examined by Dr. Robert L. Applebaum, a neurosurgeon, on July 17, 1990. He reviewed the previous medical records of her wrist injury. On examination, he found her neck to have a normal range of motion with no spasms. She had no objective nerve complaints from the nerves out from her neck to her arms. There was no wasting or weakness or twitching of her arms. The girths of her arms were equal. Duckett showed increased pin prick sensitivity across her right wrist and arm. Her reflexes were normal. Dr. Applebaum found a small ganglion cyst about 2mm-3mm in circumference across the top of her right wrist. He opined that plaintiff showed mild reflex sympathetic dystrophy, which is a pain syndrome after an injury where the pain is significantly more severe than one would expect from the severity of the injury, and is felt to be caused by a short circuit in the sympathetic nervous system. Dr. Applebaum recommended hospitalization for a few days during which Duckett would be treated with sympathetic nerve blocks. However, this procedure was not performed.
Dr. Applebaum saw Duckett again on May 15, 1991. His examination revealed the same clinical and physical findings as his previous one, except that Duckett had normal pin prick sensitivity and a positive Adson's sign on the right. However, she complained of new symptoms, including arm heaviness and numbness in the right hand and forearm. Dr. Applebaum reviewed a second EMG performed by Dr. Mohnot on Duckett on March 27, 1990. (Dr. Mohnot's notes indicate his opinion that the findings of the second EMG are essentially unchanged from the previous EMG of June 12, 1989).
Dr. George C. Battalora, a orthopedist, examined Duckett on October 29, 1990, also at that time reviewing the plaintiff's previous medical reports from Drs. Nutik, Applebaum, and Mohnot. His opinion was that plaintiff suffered from the small ganglion cyst and some mild residual pain from the wrist strain injury. Dr. Battalora recommended removal of the ganglion. He said that ganglion cysts are very common, and can arise with or without a trauma to the area. Dr. Battalora's x-rays and physical examination concurred with those of Drs. Nutik and Applebaum. He did not find any reflex sympathetic dystrophy.
Duckett testified that she suffered tremendous pain and could no longer work after the accident as a substitute teacher for handicapped students. However, her employment records revealed that the plaintiff worked approximately thirty seven full days following the slip and fall, and worked 35 full days in 1990. On cross, plaintiff admitted that she has worked since the accident as a substitute teacher for regular students. There was no testimony or evidence submitted regarding lost wages or future lost wages.
The reviewing court may fix the quantum in a suit for damages where the demands based on liability were rejected but the reviewing court has reversed its liability finding on appeal. Courville v. Piggly Wiggly Bunkie Co., 614 So.2d 1366 (La.App. 3rd Cir.1993). When making an initial award of damages, the appellate court is not limited to either the highest or lowest amount of the reasonable range of awards that would have been affirmed on appeal, but is to award an amount that is fair and just for the damages supported by the record. Whitaker v. Mullinax, 628 So.2d 222 (La.App. 2nd Cir.1993). The primary considerations in the assessment of damages in a personal injury action are the severity and duration of the injured party's pain and suffering. Whitaker, supra.
After reviewing the testimony and medical evidence as reported above, this Court believes that an award of $8,500.00 will adequately compensate the plaintiff for her pain and suffering. Our review of other *417 similar cases fully supports this award.[3] We also award plaintiff $1,540.00 in past medical expenses. The record evidence does not support awards for past or future lost wages, nor has plaintiff proven any future medical expenses.
K-Mart argues they should not be liable for judicial interest, as it has never been cast in judgment. This argument has no merit, as K-Mart was cast in judgment by our Supreme Court in its opinion of 94-0579 (La. 10/17/94), 645 So.2d 621. The law provides that in delictual cases, interest runs from the date of judicial demand, and we so order.
Each party is to bear their own costs of this appeal.
QUANTUM ASSESSED.
NOTES
[1] For this Court's previous opinions, see Duckett v. K-Mart Corp., 610 So.2d 289 (La.App. 5th Cir.1992), and 92-0385 (La.App. 5th Cir.1994).
[2] Dr. Mohnot did not testify at trial, but his treatment records were introduced.
[3] See McAllister v. Champion Ins. Co., 602 So.2d 314 (La.App. 1st Cir.1992); Becnel v. Charlet, 569 So.2d 9 (La.App. 4th Cir.1990).