SUSAN M. CHEHARDY, Judge.
| ¡¡This appeal from the Second Parish Court of Jefferson Parish arises in three consolidated cases concerning a May 31, 2001 two-car collision at the intersection of Holmes Boulevard and Behrman Highway. At issue is the trial court’s dismissal of the injury claim of a passenger in one of the vehicles. We reverse the judgment insofar as it dismissed that claim and render judgment as set out below.
Lashon D. Henry was driver of one car; Goldie H. Parson was driver of the other car. Clarice Guidry was a passenger in Parson’s vehicle. Henry sued Parson and *1156 her insurer, Allstate Insurance Company;[1] Parson sued Henry and her insurer (also Allstate Insurance Company);[2] Guidry, an interdict appearing through her curatrix, Cecilia Rodriguez, sued Henry, Parson, and Allstate as insurer for each driver.[3]
After trial, at which each driver claimed to have had the green light at the intersection, the court rendered judgment in favor of Lashon Henry and against Goldie Parson and Allstate Insurance Company in the amounts of $11,250.00 in general damages and $2,957.37 in special damages, for a total of $14,207.37. The court denied the claims of Parson and Guidry.
|4In written reasons for judgment, the trial court stated:
There were no witnesses who testified as to the accident other than the parties. Although the witnesses were credible, this court finds that the evidence preponderates in favor of Ms. Henry’s version of the accident.
This court finds that when confronted with the conflicting versions of the accident, Ms. Henry who came to a stop and then proceeded into the intersection is more likely to have proceeded on the favored signal than the opposing driver. Therefore, this court finds Ms. Parsons [sic] solely at fault in the cause of the accident....
According to the testimony Ms. Gui-dry was involved in a previous accident and in fact treated for the injuries in the previous accident the day prior to the accident that forms the subject of this litigation. There was no evidence to show that this accident caused her injuries for which she treated post accident or that her injuries pre-accident were aggravated from this accident. Therefore, this court finds insufficient evidence to award damages to Ms. Guidry.
Parson and Rodriguez, on behalf of Gui-dry, appealed the dismissal of their claims. Parson later dismissed her appeal voluntarily. Hence, only the claims of Rodriguez on behalf of Guidry remain before us.
On appeal Rodriguez asserts that the trial court erred in not applying the “guest passenger presumption of negligence” rule, and that the trial court abused its discretion in failing to award general damages, special damages and costs to Cecilia Rodriguez as curatrix on behalf of the interdict, Clarice Guidry.
The guest passenger presumption provides that when an innocent party is injured through the concurrent acts of two parties under circumstances where one or the other must be at fault, the burden is upon these parties to exculpate themselves from negligence. Richardson v. Aldridge, 37,192, p. 5 (La.App. 2 Cir. 5/16/03), 854 So.2d 923, 935, writ denied, 03-3034 (La.2/6/04), 865 So.2d 743. This is an evidentiary rather than a substantive rule, because it does not exempt the plaintiff from the ultimate burden of proving his or her case. Id.
[¡/The trial court found Goldie Parson at fault in the accident; that finding is uneon- *1157 tested.[4] Therefore, Rodriguez contends, the trial court erred by failing to rule on the merit of Rodriguez’ claim for damages sustained by Clarice Guidry. Further, Rodriguez asserts, the unrefuted medical records in evidence show that Guidry suffered personal injury due to the accident of May 31, 2001. Rodriguez argues that the trial court was manifestly erroneous in refusing to find Guidry suffered injury in the accident of 2001, given the uncontra-dicted findings of Dr. James Dyess in evidence.
Allstate opposes Guidry’s appeal by arguing that the medical records support the trial judge’s finding that there was insufficient evidence to award damages to Clarice Guidry.
In reviewing the trial court’s reasons for judgment, we conclude the court did not fail to find that Goldie Parson is liable for injuries to Clarice Guidry caused by this accident. Rather, the court found that any injuries for which Guidry was treated following the accident of May 31, 2001 were attributable to a prior accident, not to the accident at issue here. In view of that determination, the court did not discuss liability of Parson to Guidry.
An appellate court may not set aside a trial court’s finding of fact unless there is manifest error or it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The appellate court first must find from the record that there is no reasonable factual basis for the trial court’s ruling; then the appellate court must further determine that the record establishes that the court’s finding is clearly wrong (manifestly erroneous). Stobart v. State through the Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
1 fiHowever, an appellate court is not required to affirm the trier of fact’s refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony, where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking legal principles. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
We must decide, therefore, whether the trial judge’s determination was manifestly erroneous.
Goldie Parson is a daily caregiver for the interdicted Clarice Guidry, who is mentally disabled and is unable to talk. Parson testified that although Guidry is unable to talk, when she is in pain she can indicate what parts of her body hurt. According to Parson, the next day after the accident, Guidry showed her that her arm hurt and her neck hurt. Parson accompanied Guidry to the office of Dr. James M. Dyess of Dyess Medical Pain Management two weeks after the accident.
Parson admitted that Guidry had been in another accident in December 2000, pri- or to the accident in this case, in which Parson also was involved. Parson also admitted that both she and Guidry visited Dr. Dyess for treatment the day before the 2001 accident made the basis of this suit. Asked whether Dr. Dyess is able to speak to Guidry directly and receive responses directly from her (e.g., without Parson’s serving as interpreter), Parson said yes, that when the doctor asks Guidry where it hurts, Guidry points to it.
Cecilia Rodriguez testified that Clarice Guidry is her aunt and was age 79 at the time of the trial in 2004. Guidry was born with impaired mental function and has the mentality of a child of five or younger. Rodriguez has been Guidry’s court-appointed curator for 32 years, and Guidry *1158 resides with Rodriguez. Rodriguez handles all matters for Guidry, from physical care to business matters.
17According to Rodriguez, Guidry can dress herself, brush her teeth, and fold her clothes. She also can recall things that happened years ago that made an impression on her, but she does not remember things on a daily basis. Said Rodriguez, “She has no conception of explaining herself or telling you what she really wants you to know.” Rodriguez said Guidry would be unable to testify in court because she would not understand the questions or be able to express herself in answer.
Rodriguez said, however, that Guidry is able to communicate with her: “If she has a problem, she’ll tell me. Like if she’s hurting, where she hurts. I — I’ll also ask her if she wants a pain medication and sometimes no, she doesn’t want it. She’d rather just let it wear off itself.”
After Guidry returned home on the day of the accident, Rodriguez asked her whether she had any pain or anything that hurt. Rodriguez said Guidry told her no. The next morning, however, when she got up she had a headache and her right shoulder was hurting her.
Asked about Guidry’s injuries following the December 2000 accident, Rodriguez said Guidry had injury to a hip, the lower back, and her right shoulder. She was treated for those by Dr. Dyess. At the time of the May 2001 accident, Guidry still sometimes complained of those injuries, especially the shoulder. Rodriguez said, “She colors a lot and I think from bending over, it kind of aggravates the shoulder some.” After the May 2001 accident, said Rodriguez, Guidry’s symptoms returned and she still complains about her shoulder hurting occasionally.
Rodriguez testified that following the May 2001 accident, she took Guidry to the Family Doctors clinic, where she has been regularly treated for more than a decade by various doctors in the clinic. In addition, Guidry was treated by Dr. |sDyess following the December 2000 accident and also following the May 2001 accident. Rodriguez said she takes Guidry to all her doctor visits.
Rodriguez said that Guidry is able to tell a doctor where she hurts, but “that’s as far as it goes ... .she can’t express herself.” Rodriguez relays to the doctor the symptoms that Guidry has.
Following the May 2001 accident, Rodriguez testified, Guidry had pain in her neck and her right shoulder and, now and then, in her right hip. Rodriguez noted she considered the hip pain a sign of arthritis because “it never stopped her ... from her activities.” However, she complained a lot about the head, the shoulder and the arm. She also complained, and continues to complain, of headaches. Those had not occurred following the December 2000 accident.
The medical records from Family Doctors dated July 25, 2001 state that Guidry was in an MVA (motor vehicle accident) in December 2000 and suffered neck pain, as well as another MVA in June 2001. However, there is no indication that she was ever .treated at Family Doctors for any problem from those accidents.
The medical records from Dr. Dyess show that Guidry first saw him on January 10, 2001, and was treated by him over the course of the next few months until May 2, 2001. On that date Guidry “reported her neck, right upper shoulder and lower back symptoms all resolved,” and Dr. Dyess discharged her from his care. On May 30, 2001 (the day before the accident here), however, Guidry returned to Dr. Dyess and was again complaining of neck, right upper shoulder, and lower back pains. She indicated all pains returned within two *1159 weeks after her discharge from treatment for the prior accident. At that time Dr. Dyess directed that Guidry restart her therapy sessions to the afflicted regions and prescribed Celebrex, the same medication Guidry had been taking previously under his care.
li)On June 14, 2001 Dr. Dyess made an “Initial Office Evaluation” of Guidry for the 2001 accident, which his report indicates took place on June 1 (rather than May 31). The Clinical Impressions section of his report states:
1) History of MVA 12/21/00 — still being treated by me with residual of cervical and lumbar pains — now with acute exacerbation of increased intensity and increased frequency of both pains.
2) Right tricep strain (new).
3) History of hypertension.
4) History of osteoporosis.
5) Post traumatic cephalalgias.
Guidry continued to be treated by Dr. Dyess with therapy and medication for her cervical and lumbar pain, as well as the shoulder pain, until March 18, 2002, when she was discharged.
We find the trial judge was clearly wrong in finding that Guidry’s injuries were related only to the December 2000 accident. Dr. Dyess’ medical records, which were not challenged, state that Guidry’s injuries from the 2000 accident were acutely exacerbated following the 2001 accident. Accordingly, we reverse the dismissal of Rodriguez’ claim for Gui-dry’s injuries and expenses.
If the fact finder does not reach an issue because of an earlier finding which disposes of the case, the appellate court, in reversing the earlier finding, must make a de novo determination of undecided issues from the facts presented in the record. Generally, if the appellate court makes a finding that the trial court was manifestly erroneous or that there is a legal error and the record is, otherwise, complete, the appellate court should render judgment on the record. In such cases, the appellate court is not subject to the manifest error rule, but decides the case de novo. [Citations omitted.]
LeBlanc v. Allstate Ins. Co., 00-1128 (La.App. 5 Cir. 11/28/00), 772 So.2d 400, 403.
IiqA person injured through the fault of another is entitled to full indemnification for damages caused thereby; a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Wainwright v. Fontenot, 00-0492, p. 5 (La.10/17/00), 774 So.2d 70, 74, citing State Farm Mut. Auto. Ins. Co. v. Berthelot, 98-1011 (La.4/13/99), 732 So.2d 1230, and American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991).
“It is well settled in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Where defendant’s negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation.” (Citations omitted.) Touchard v. Slemco Elec. Foundation, 99-3577, pp. 5-6 (La.10/17/00), 769 So.2d 1200, 1204.
The reviewing court may fix the quantum in a suit for damages where the demands based on liability were rejected but the reviewing court has reversed its liability finding on appeal. When making an initial award of damages, the appellate court is not limited to either the highest or lowest amount of the reasonable range of awards that would have been affirmed on appeal, but is to award an amount that is fair and just for *1160 the damages supported by the record. The primary considerations in the assessment of damages in a personal injury action are the severity and duration of the injured party’s pain and suffering. [Citations omitted.]
Duckett v. K-Mart Corp., 92-385, pp. 4-5 (La.App. 5 Cir. 2/15/95), 650 So.2d 414, 416.
Dr. Dyess’ records of his treatment establish that Guidry made 15 visits to his office between June 13, 2001 and March 18, 2002. On 14 of those occasions she underwent physiotherapy consisting of moist heat and ultrasound to the afflicted regions, and was given pain medication for daily use. In his discharge | T1report dated March 18, 2002, Dr. Dyess stated in his opinion that Guidry’s symptoms and physical findings were “more probable than not” caused by the accidents in 2000 and 2001.
Because of Guidry’s mental handicap, all testimony regarding the pain she felt was of necessity from others — her euratrix, her caregiver, and the records of her treating physician. The trial judge made no finding that those persons were not credible. Rather, he erroneously found that all of Guidry’s injuries were attributable to her prior accident. Guidry could not testify on her own behalf, but the testimony of the others was unanimous that her injuries from the prior accident were aggravated by the 2001 accident.
Based on our die novo review of the record, we determine that an appropriate award for Guidry’s injuries is $7,000.00. We also award medical expenses in the amount of $920.00 for Clarice Guidry’s treatment by Dr. Dyess.
For the foregoing reasons, the judgment is reversed insofar as it dismissed the claims of Cecilia Rodriguez as euratrix on behalf of Clarice Guidry, but is affirmed as to liability in other respects. The judgment is recast and rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Lashon Henry and against Goldie H. Parson and Allstate Insurance Company in the amount of Eleven Thousand Two Hundred Fifty and No Hundredths ($11,250.00) Dollars in general damages, together with Two Thousand Nine Hundred Fifty-Seven and Thirty-Seven Hundredths ($2,957.37) Dollars in special damages, and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Cecilia Rodriguez, as Curatrix on Behalf of the Interdict, Clarice Guidry, and against Goldie H. Parson and Allstate Insurance Company in the amount of Seven Thousand and No Hundredths ($7,000.00) Dollars in general damages, together with Nine Hundred Twenty and No | ^Hundredths ($920.00) Dollars in special damages, and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the petition of Goldie H. Parson is dismissed at her cost.

AFFIRMED IN PART, REVERSED IN PART, RECAST AND RENDERED.

. Henry v. Parson, No. 05-CA-308 (Second Parish Court No. 85675).

. Parson v. Allstate, No. 05-CA-309 (Second Parish Court No. 86896). This party's last name appears as "Parsons'' in the petition filed by Henry, which governed the name given to the case by the district court and by this Court. It also appears as "Parsons” in various pleadings filed by each of the parties throughout the litigation. However, it is shown as "Parson” in the other two petitions, in the transcript, and also on the medical and insurance records filed in evidence. Therefore, we refer to her as "Parson” or as "Goldie H. Parson.”

.Rodriguez v. Allstate, No. 05-CA-310 (Second Parish Court No. 87100).

. Allstate did not appeal the liability determination against its insured, Parson.